FILED
United States Court of Appeals
Tenth Circuit

**January 30, 2009**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ALPINE BANK, a Colorado banking
corporation,

     Plaintiff - Counter-
     Defendant - Appellee,

     v.

PLATT T. HUBBELL; KELLEY S.
HUBBELL,

     Defendants -
     Counterclaimants - Third
     Party Plaintiffs -
     Appellants.

and

GEORGIA CHAMBERLAIN, as
Public Trustee of Garfield County,
Colorado,

     Defendant-Third-Party-Plaintiff,

v.

CARNEY BROTHERS
CONSTRUCTION, a Colorado
corporation; IAN CARNEY;
RICHARD CARNEY; KERRY M.
KARNAN; THANE R. LINCICOME;
T.J. CONCRETE CONSTRUCTION,
INC., a Colorado corporation;
TEAMCORP, INC., doing business as
Draft Tek,

     Third Party Defendants,

No. 07-1190

---

## ORDER

---

Before **TACHA, HARTZ,** Circuit Judges, and **DEGIUSTI**[*]**,** District Judge.

---

This matter is before us on the Hubbells' Petition for Panel Rehearing. We GRANT the petition for the limited purpose of inserting three paragraphs in our Opinion, on pages 25 to 27. The Opinion filed on December 31, 2008, is vacated and the attached revised Opinion is substituted in its place.

Entered for the Court,

*Elisabeth A. Shumaker*

ELISABETH A. SHUMAKER, Clerk

---

[*]Honorable Timothy D. DeGiusti, U.S. District Court Judge, Western District of Oklahoma, sitting by designation.

FILED
United States Court of Appeals
Tenth Circuit

January 30, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

_____

ALPINE BANK, a Colorado banking
corporation,

     Plaintiff - Counter-
     Defendant - Appellee,

     v.

PLATT T. HUBBELL; KELLEY S.
HUBBELL,

     Defendants -
     Counterclaimants - Third
     Party Plaintiffs -
     Appellants.

and

GEORGIA CHAMBERLAIN, as
Public Trustee of Garfield County,
Colorado,

     Defendant-Third-Party-Plaintiff,

v.

CARNEY BROTHERS
CONSTRUCTION, a Colorado
corporation; IAN CARNEY;
RICHARD CARNEY; KERRY M.
KARNAN; THANE R. LINCICOME;
T.J. CONCRETE CONSTRUCTION,
INC., a Colorado corporation;

No. 07-1190

TEAMCORP, INC., doing business as
Draft Tek,

       Third Party Defendants,

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 05-cv-0026-EWN-PAC)**

---

Daniel Fowler (Katherine Taylor Eubank with him on the briefs), of Fowler, Schimberg & Flanagan, P.C., Denver, Colorado, for Appellants.

John Palmeri of Gordon & Rees, LLP, Denver, Colorado, (Heather K. Kelly of Gordon & Rees; and Michael T. McConnell, Walter N. Houghtaling, Robert W. Steinmetz of McConnell Siderius Fleischner Houghtaling & Craigmile, LLC, Denver, Colorado, with him on the brief) for Appellee.

---

Before **TACHA**, **HARTZ**, Circuit Judges, and **DEGIUSTI**,[*] District Judge.

---

**HARTZ**, Circuit Judge.

---

When a dream home turns into a nightmare, litigation happens. Platt and Kelley Hubbell took out a $1,280,000 construction loan from Alpine Bank to build a home. After some $800,000 had been disbursed to the contractor, the Hubbells discovered that the home was less than one-third complete, necessary building permits had not been obtained, and it might be cheaper to tear down what

---

[*] Honorable Timothy D. DeGiusti, U.S. District Court Judge, Western District of Oklahoma, sitting by designation.

had been built and start over. The Bank sued the Hubbells when they failed to repay the loan upon maturity. The Hubbells counterclaimed against the Bank for breach of contract, negligent misrepresentation, fraudulent nondisclosure, and violation of the Colorado Consumer Protection Act (CCPA). Underlying all the counterclaims, as well as the Hubbells' defense to the Bank's claim, were allegations that the Bank had not performed on its promises to oversee construction and had misled the Hubbells regarding the contractor and the course of construction. The United States District Court for the District of Colorado entered summary judgment in favor of the Bank on all claims and counterclaims. The Hubbells appeal, arguing in support of each of their counterclaims (and stating that the same arguments compel reversal of the judgment in favor of the Bank on its claim). We have jurisdiction under 28 U.S.C. § 1291.

We affirm the summary judgment because the Hubbells have failed to show that the district court erred in rejecting its four counterclaims. The Hubbells' contract counterclaim, based on an alleged breach of the contractually implied duty of good faith and fair dealing arising from the Bank's failure to oversee the construction, is barred by the Limitation of Responsibility provision in the Construction Loan Agreement (the Loan Agreement). With respect to the negligent-misrepresentation counterclaims, we hold that one alleged misrepresentation was nonactionable puffery and that the record does not support a contention that the other alleged misrepresentations were made with the

requisite state of mind.  As for the fraudulent-nondisclosure counterclaims, we agree with the district court that the Hubbells and the Bank did not have a fiduciary relationship or relation of confidence that imposed on the Bank a duty to disclose to the Hubbells negative information regarding the construction or the contractor.  And to the extent that the Hubbells contend that the Bank's nondisclosures violated any other duty to them, they have failed to support that contention with sufficient argument to present it for our consideration on appeal. Regarding the CCPA counterclaim, which was based on two alleged misrepresentations by the Bank, we agree with the district court that one alleged misrepresentation was mere puffery and that the other alleged misrepresentation was not shown to have significantly impacted the public.  Finally, we hold that the district court committed no prejudicial error when it granted summary judgment without first ruling on (1) the Hubbells' motions to delay ruling until certain discovery had been completed, (2) the Hubbells' objections to the magistrate judge's denial of their motion to add two counterclaims, and (3) the Hubbells' objection to the magistrate judge's order quashing a subpoena to a state agency.

I.    BACKGROUND

   A.    The Loan and Construction

We summarize the pertinent evidence presented to the district court with respect to the Bank's summary-judgment motion, viewing it in the light most

favorable to the Hubbells. *See Pignanelli v. Pueblo Sch. Dist. No. 60*, 540 F.3d 1213, 1216 (10th Cir. 2008). The Hubbells, who are both airline pilots, purchased property in Colorado to build a custom home. When considering potential lenders, they heard the Bank's advertising slogan: "So . . . you're about to buy a new home, or build one. You concentrate on your dream. We'll take care of everything else." Aplt. App. at 245. They consulted Elizabeth Cox, an assistant vice-president at the Bank's Carbondale branch, and expressed to her their concerns about not being able to monitor the construction of their new home while living out-of-state. Cox assured the Hubbells that the Bank would monitor the project and conduct frequent inspections to ensure that the advances of funds requested by the contractor matched the percentage of construction completed.

On January 22, 2003, the Hubbells executed the Loan Agreement, a Promissory Note, and a Construction Deed of Trust with the Bank to finance the building of their home. Under the Loan Agreement the Bank's obligation to advance funds for construction was subject "to the fulfillment to [the Bank's] satisfaction of all of the conditions set forth in this Agreement." *Id.* at 60. The conditions set forth in the Loan Agreement included the Bank's (1) approval of all contractors, (2) acceptance of construction plans and specifications, (3) receipt of the Architect's Contract, (4) receipt of all permits necessary for construction, and (5) approval of a project budget. The Loan Agreement also required the Hubbells to apply to the Bank for each advance of funds on a standard application

-5-

form, but the Bank could, "[a]t its sole option," disburse funds directly to the contractor.  *Id.* at 61.

Of central importance to the dispute before us is the Loan Agreement's Limitation of Responsibility provision, which attempted to eliminate the Bank's liability to anyone for its actions relating to the inspection of construction and the advance of funds.  It said:

> The making of any Advance by [the Bank] shall not constitute or be interpreted as either (A) an approval or acceptance by [the Bank] of the work done through the date of the Advance, or (B) a representation or indemnity by [the Bank] to any party against any deficiency or defect in the work or against any breach of contract. Inspections and approvals of the Plans and Specifications, the Improvements, the workmanship and materials used in the Improvements, and the exercise of any other right of inspection, approval, or inquiry granted to [the Bank] in this Agreement are acknowledged to be solely for the protection of [the Bank's] interests, and under no circumstances shall they be construed to impose any responsibility for liability of any nature whatsoever on [the Bank] to any party.  Neither [the Hubbells] nor any contractor, subcontractor, materialman, laborer, or any other person shall rely, or have a right to rely, upon [the Bank's] determination of the appropriateness of any Advance.  No disbursement or approval by [the Bank] shall constitute a representation by [the Bank] as to the nature of the Project, its construction, or its intended use for [the Hubbells] or for any other person, nor shall it constitute an Indemnity by [the Bank] to [the Hubbells] or to any other person against any deficiency or defects in the Project or against any breach of contract.

*Id.*

Before selecting a contractor, the Hubbells sought advice from the Bank. They asked whether Carney Brothers Construction (CBC) (headed by Richard and Ian Carney) was reputable.  Joseph Scofield, a Bank officer, told them that (1)

-6-

they could not do any better than CBC, (2) he knew co-owner Ian Carney personally, and (3) he would have had CBC build his personal residence if CBC had been available at the time. Scofield did not, however, inform the Hubbells that CBC had a long-standing relationship with the Bank.

The Hubbells signed a construction agreement with CBC on January 23, 2003, the day after executing the Loan Agreement. Construction began in May 2003. Between May and December 2003, Bank assistant vice-president Cox made six or seven inspections of the construction site and arranged for a third-party inspector to report on the construction at least once or twice. But the Hubbells contend that the extent of this oversight was inadequate. They complain that the Bank failed

> [1] to require complete plans and a meaningful budget before closing; [2] to request an improvement survey that would have revealed [a] siting error much earlier in the course of construction; [3] to investigate [CBC's] qualifications as a "design-build" contractor; [4] to confirm issuance of required building permits; [5] to prevent [CBC] from frontloading excessive profit and overhead into the first draws [on the loan]; [and] [6] to confirm that the amounts of draws by [CBC] matched the percentage of work performed.

Aplt. Br. at 24. Of particular concern to the Hubbells was item 4, the Bank's failure to disclose that CBC had not obtained the necessary building permits. When CBC told the Hubbells that it had obtained those permits, which it would provide to the Bank, the Hubbells passed this information along to Cox. CBC's statement was false; it never obtained the permits. Yet no one at the Bank

notified the Hubbells that CBC had not delivered the permits, and throughout the project the Bank continued to recommend that the Hubbells approve advances to CBC.

The Hubbells further complain that the Bank failed to disclose known problems with CBC's operating account at the Bank. The problems led the Bank to terminate its relationship with CBC in June 2003. Thereafter, Cox amended the procedure for advances to CBC from the Hubbells' loan. Instead of CBC's paying the subcontractors directly, it had to write checks to the Bank, which then distributed funds to the subcontractors. The Bank, however, did not inform the Hubbells of these problems with CBC until September 2003, when Cox told them only that CBC had occasionally paid subcontractors out of the construction loan without obtaining lien waivers. Concerned by this disclosure, the Hubbells again sought advice from the Bank, this time regarding whether they should fire their contractor. Scofield advised them to continue with CBC, saying that Ian Carney would "'do the right thing'" and that the Bank would "make [CBC] do it right." Aplt. App. at 248, 256.

In the following months the Hubbells had several meetings with CBC and the Bank in an attempt to resolve concerns about the pace of construction and the rising costs. At a meeting on December 11, 2003, the Hubbells rejected a settlement proposal from CBC and instead terminated the contractor. By this time the Hubbells had approved advances of approximately $800,000 out of the total

$1,280,000 under the Loan Agreement. The next day they discovered that an inspector had ordered all construction to cease because CBC had never obtained the necessary building permits. Later the Hubbells hired a licensed architect and professional engineer to inspect the work. They were informed that (1) their home was less than one-third complete, (2) much of the work would have to be repaired or replaced because of significant design and construction defects, and (3) it might be cheaper to tear down the whole thing and start over.

## B. The Litigation Below

On July 25, 2004, the Hubbells' Promissory Note matured. In November the Bank filed a complaint on the note in Colorado state court, and the Hubbells removed the action to federal court. On January 21, 2005, the Hubbells answered the complaint and asserted counterclaims against the Bank for breach of contract, negligent misrepresentation, fraudulent disclosure, and violation of the CCPA. On April 5, 2006, the Bank filed a motion for summary judgment.

Before responding to the Bank's motion, the Hubbells moved to compel the Bank to produce internal bank emails concerning the Hubbells' loan and the CBC bank account. They then moved under Federal Rule of Civil Procedure 56(f) for an extension of time to respond to the motion for summary judgment while awaiting production of the bank emails. The court granted the motion in part, giving the Hubbells until May 1 to respond to the Bank's motion. The Hubbells filed a timely response, but included within it a renewed request for an extension

of time under Rule 56(f) until the emails were produced and the depositions of Bank officers Cox, Scofield, and Richard Fuller were completed.

On May 26, 2006, the Hubbells filed a motion to amend their counterclaim. A magistrate judge granted the motion in part by allowing the Hubbells to amend to reflect their current domicile, but she refused to permit new counterclaims of negligence and breach of fiduciary duty because the motion was untimely. On June 8, 2006, the Hubbells served a subpoena duces tecum on the Colorado Division of Banking, seeking to discover records regarding CBC and its principals. The Division filed a motion to quash the subpoena, which the magistrate judge granted. The Hubbells filed objections to the magistrate judge's rulings on their motion to amend and the Division's motion to quash.

After the Hubbells responded to the Bank's motion for summary judgment, discovery continued. The Hubbells deposed Fuller on May 18, 2006, and Cox and Scofield on May 19. They also deposed two technical employees at the Bank, who stated that the emails sought by the Hubbells were no longer retrievable from the Bank's computer systems; as a result of this testimony, the Hubbells withdrew their motion to compel discovery of bank emails on May 22. On December 6, 2006, the Hubbells deposed Scofield a second time, thus completing the discovery for which they had requested an extension of time in their second Rule 56(f) motion. The Hubbells did not, however, file a supplemental brief regarding the summary-judgment motion before the district court granted the motion on

March 2, 2007.  The court said nothing further regarding the Hubbells' requested relief under Rule 56(f), and it ruled that their objections to the magistrate judge's rulings were mooted by the summary judgment.

## II.    DISCUSSION

We review de novo the district court's grant of summary judgment.  *See Pignanelli*, 540 F.3d at 1216.  Summary judgment should be granted if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

### A.    Breach-of-Contract Claim

The Hubbells acknowledge that the Loan Agreement gave the Bank discretion regarding the extent to which it would oversee construction before making disbursements to CBC from the Hubbells' loan.  But they contend that the Bank violated the implied contractual duty of good faith and fair dealing when it failed to notify them how it would be exercising that discretion.  The district court granted the Bank summary judgment on this claim.  We agree with the district court.

Colorado law "recognizes that every contract contains an implied duty of good faith and fair dealing."  *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995).  This duty prohibits a party from exercising "discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to

deprive the other party of the benefit of the contract." *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1363 (Colo. Ct. App. 1994).

The Loan Agreement permitted the Bank to oversee construction, granting it the right to deny advances to the contractor until the satisfaction of various conditions, such as its receipt of necessary permits and its approval of the contractor and of the contractor's progress. The agreement also gave the Bank the right not to insist on these conditions. The Hubbells argue, however, that the Bank's duty of good faith and fair dealing obligated it to tell the Hubbells if it was not going to do so, so that the Hubbells could take other steps to protect themselves.

But the duty of good faith and fair dealing "will not contradict terms or conditions for which a party [to the contract] has bargained." *Amoco Oil Co.*, 908 P.2d at 498. It "does not obligate a party to accept a material change in the terms of the contract or to assume obligations that vary or contradict the contract's express provisions." *Wells Fargo*, 872 P.2d at 1363.

We therefore must reject the Hubbells' good-faith-and-fair-dealing argument because the duty they are trying to impose is contrary to the terms of the Loan Agreement. The Loan Agreement's Limitation of Responsibility provision includes the following sentence:

> The making of any Advance by [the Bank] shall not constitute or be interpreted as either (A) an approval or acceptance by [the Bank] of the work done through the date of the Advance, or (B) a

-12-

> representation or indemnity by [the Bank] to any party against any deficiency or defect in the work or against any breach of contract.

Aplt. App. at 61. In addition, any oversight by the Bank of the construction project was "acknowledged to be solely for the protection of [the Bank's] interests," and under no circumstances to "be construed to impose any responsibility or liability . . . on [the Bank] to any party." *Id.* Also, the Hubbells had no "right to rely upon [the Bank's] determination of the appropriateness of any Advance." *Id.* And "[n]o disbursement or approval by [the Bank] . . . constitute[d] a representation by [the Bank] as to the nature of the Project, its construction or its intended use for [the Hubbells] or for any other person nor [did] it constitute an indemnity by [the Bank] to [the Hubbells] or to any other person against any deficiency or defects in the Project or against any breach of any contract." *Id.*

This language protects the Bank from any liability for failures in determining the propriety of advances. To impose liability on the Bank for not disclosing its failures to the Hubbells would be inconsistent with that provision. We must keep in mind that "[t]he good faith performance doctrine is generally used to effectuate the intentions of the parties or to honor their reasonable expectations." *Amoco Oil*, 908 P.2d at 498. It would beggar the imagination to believe that the Bank, after making so clear in the Limitation of Responsibility provision that it owed the Hubbells no duty to oversee construction, was assuming a duty to inform the Hubbells whenever, intentionally or through inadvertence, it

-13-

failed to check on something before disbursing funds. And it would have been unreasonable for the Hubbells to expect such notification from the Bank. The whole thrust of the Limitation of Responsibility provision is to inform the Hubbells that they have no right to rely on the Bank with respect to overseeing construction. Given the Bank's contractual immunity from liability to the Hubbells for failure to oversee construction, we cannot read into the Loan Agreement an implied duty of notice that would permit any claim of failure of oversight to be repackaged as a claim of failure to notify the Hubbells of the failure of oversight. Accordingly, we affirm the district court's award of summary judgment to the Bank on the Hubbells' breach-of-contract counterclaim.

## B.    Tort Claims

The Hubbells' counterclaim labels their first cause of action as "Negligent Misrepresentation" and their third as "Fraudulent Nondisclosure." Their appellate briefs, however, do not clearly delineate between the two theories. For example, their opening brief merges the discussion of both causes of action in one section of the argument, which begins:

> Bank made a number of representations and omissions, *see* [Statement of Facts], which the factfinder could reasonably consider to trigger liability under fraud or negligent misrepresentation theories (the elements of which are discussed further below):
>
> [1] Bank advertising/philosophy of "You take care of your dream. We'll take care of everything else." with no disclaimer;
>
> [2] Cox's representations to Hubbells and other potential construction loan customers that Bank would conduct frequent

inspections, monitor project from beginning to end, and act on behalf
of borrowers, again with no disclaimer;

[3] Scofield recommendations regarding [CBC] before Hubbells
entered into general contract, without disclosure of Bank's existing
relationship with [CBC];

[4] Cox failure to disclose that Bank did not receive permits after
Hubbells relayed [CBC's] statement that permits would be dropped
off;

[5] Bank failure to disclose waiver or inaction regarding inspections
and other conditions precedent to disbursements; and

[6] Scofield recommendations regarding continuing to work with
[CBC], without disclosure of [CBC] banking irregularities and
Bank's decision to close [CBC] accounts.

Aplt Br. 34–35. As best we can tell, these six items belong in the following
categories: The first two speak of affirmative statements, so they are alleged
misrepresentations. The last four refer to failures to disclose, so we assume that
those alleged failures are fraudulent nondisclosures. In addition, items 3 and 6
refer to affirmative recommendations, suggesting that those recommendations
were themselves misrepresentations; but we must be careful that we do not do the
Hubbells' work for them in presenting theories and arguments (more on this
later). We begin with the alleged misrepresentations.

### 1.      Negligent Misrepresentation

Under Colorado law, "[t]o prevail on a claim for negligent
misrepresentation," a plaintiff must prove that "(1) [the defendant] supplied false
information in a business transaction; (2) it failed to exercise reasonable care or

competence in obtaining or communicating that information; and (3) [the plaintiff] justifiably relied upon the false information." *Campbell v. Summit Plaza Assocs.*, 192 P.3d 465, 477 (Colo. Ct. App. 2008); *see* Restatement (Second) of Torts § 552 (1977).

The Hubbells' first claim is based on the Bank's advertising slogan: "So . . . you're about to buy a new home, or build one. You concentrate on your dream. We'll take care of everything else." Aplt. App. at 245. But this slogan cannot trigger liability because it amounts to mere puffery. The term *puffery* is used to characterize those vague generalities that no reasonable person would rely on as assertions of particular facts. In a classic statement of the underlying principle (which also serves as a reminder that politics has not changed that much in the last century), Learned Hand wrote:

> There are some kinds of talk which no sensible man takes seriously, and if he does he suffers from his credulity. If we were all scrupulously honest, it would not be so; but, as it is, neither party usually believes what the seller says about his own opinions, and each knows it. Such statements, like the claims of campaign managers before election, are rather designed to allay the suspicion which would attend their absence than to be understood as having any relation to objective truth. It is quite true that they induce a compliant temper in the buyer, but it is by a much more subtle process than through the acceptance of his claims for his wares.

*Vulcan Metals Co., Inc. v. Simmons Mfg. Co.*, 248 F. 853, 856 (2d Cir. 1918). In determining whether a statement is puffery, the context matters. The relative expertise of the speaker and the listener can be a critical factor. *See id.* So can the size of the audience. What is said to a particular person may take on meaning

-16-

that would not be present if made to a large group. Thus, mass advertising expressed in vague terms (as in political campaigns) is not relied on by rational adults. For example, the slogan "You're in good hands with Allstate" was held to be puffery in *Rodio v. Smith*, 587 A.2d 621, 624 (N.J. 1991).

One reason such statements are not to be relied on is that they could not possibly mean everything that might be implied. Here, the advertisement says that the customers need only dream and the Bank will "take care of everything else." Aplt. App. at 245. Such as build the home, choose a site, select the builder, supervise construction? A reasonable person desiring the Bank to perform in a particular way would need a more specific assurance than "we'll take care of everything else." *Id.* Accordingly, we affirm summary judgment on this misrepresentation claim.

The Hubbells next seek to impose liability on the Bank for Cox's promise to oversee construction. Although this promise was not puffery, such a promise cannot serve as the predicate for a negligent-misrepresentation claim. *See High Country Movin', Inc. v. U.S. West Direct Co.*, 839 P.2d 469, 471 (Colo. Ct. App. 1992) (negligent misrepresentation claim "cannot be based solely on the nonperformance of a promise to do something at a future time."). This is not some obscure technical rule. It is a natural consequence of the meanings of the terms *negligent* and *misrepresentation*. A misrepresentation conveys "false information." *Campbell*, 192 P.3d at 477; that is, it must be a false statement of

-17-

fact.  But a promise in itself contains no assertion of fact other than the implied

representation that the speaker intends to perform the promise.  *See High Country*,

839 P.2d at 471; Restatement (Second) of Torts § 530 ("Misrepresentation of

Intention").  (Of course, when uttering the promise the speaker may make other

explicit or implicit assertions of fact, but that is not the issue here.)  The

misrepresentation must therefore be that the promissor is falsely declaring that he

has the intent to perform.  If the promissor intends not to perform, however, the

misrepresentation (that the promissor intends to perform) is not negligent; it is,

rather, knowing and intentional, *see Kinsey v. Preeson*, 746 P.2d 542, 551 (Colo.

1987) ("A promise concerning a future act, when coupled with a present intention

not to fulfill the promise, can be a misrepresentation which is actionable as

fraud." (internal quotation marks omitted)).

On the other hand, the Hubbells could be asserting that Cox's promise was

intentionally false.  To prevail on a claim for fraudulent misrepresentation, a

plaintiff must prove that (1) the defendant made a knowing misrepresentation**,** (2)

the plaintiff relied on the misrepresentation, and (3) the plaintiff's reliance was

justified.  *Williams v. Boyle*, 72 P.3d 392, 399 (Colo. Ct. App. 2003).  Although

the Hubbells' complaint labels the Bank's alleged misrepresentations as

negligent, rather than fraudulent, misrepresentations, it alleges that the Bank

"*knew* or should have known" that its representations were false, Aplt. App. at

531 (emphasis added); and their appellate briefs employ language suggesting that

-18-

the alleged misrepresentations were intentional. "[L]ooking beyond labels to the substance of the allegations," we can read the negligent-misrepresentation claim to state a claim for fraudulent misrepresentation as well. *Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2002) (construing claim of negligent misrepresentation as encompassing intentional misrepresentation). We must construe pleadings "so as to do justice," Fed. R. Civ. P. 8(e), which requires "that we not rely solely on labels in a complaint, but that we probe deeper and examine the substance." *Minger*, 239 F.3d at 799. Thus, we also consider a possible claim that Cox made a fraudulent misrepresentation to the Hubbells when she promised to oversee construction. (We recognize that the complaint may also be alleging that the Bank's advertising slogan was a fraudulent, and not just a negligent, misrepresentation. But our above discussion would dispose of such a claim because puffery cannot be the basis of *any* misrepresentation claim; whether the misrepresentation was made negligently or intentionally, a reasonable person would not rely on it. *See Vulcan Metals*, 248 F. at 854 (addressing claim of fraudulent misrepresentation); *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 379 (9th Cir. 2003) (addressing claims of intentional and negligent misrepresentation).)

Nevertheless, we affirm the summary judgment in favor of the Bank on the claim of fraudulent misrepresentation by Cox. Although the district court stated that there was "a genuine issue of material fact as to whether the Bank intended to

fulfill its alleged promise to oversee the construction project for [the Hubbells']

benefit," Aplt. App. at 601, we respectfully disagree, at least insofar as the

court's statement is addressing the Bank's intent at the time that the promise was

made. To begin with, as the district court appears to acknowledge earlier in its

opinion, Cox never stated that the inspections to be conducted by the Bank were

intended for the Hubbells' benefit. The Hubbells submitted affidavits that they

were assured that the Bank would "be on [their] side," *id.* at 245, 253; but that

alleged statement was so vague as to be puffery. The concrete promises allegedly

made by Cox concerned the scope and frequency of Bank inspections of the

construction. There is no evidence, however, that these promises were knowingly

false—that is, uttered without intent to perform as promised. Indeed, the

promised inspections would benefit the Bank by ensuring the value of the home,

which was the collateral for its loan. Its interest would appear to be congruent to

the Hubbells'. To be sure, when CBC and its owners were in financial difficulty

and owed large sums to the Bank, the interests of the Hubbells and the Bank

diverged; the Bank then may have had an incentive to pay CBC from the

Hubbells' loan proceeds, even at the risk that the collateral for the Hubbells' loan

was impaired. But the Hubbells have not pointed us to any evidence in the

record, nor have we found any, that the Bank had any concerns about CBC's

financial condition before the Hubbells entered into the Loan Agreement with the

Bank; on the contrary, their counterclaim alleges that "*after construction began*,

[the Bank] became aware of improper bookkeeping and banking practices by CBC, . . . including . . . issuing checks to subcontractors for which there were insufficient funds." Aplt. App. at 86 (emphasis added). Accordingly, summary judgment was proper on this claim. Our ground for affirmance differs from the ground relied upon by the district court, but we can affirm on any ground supported by the record, so long as the appellant has "had a fair opportunity to address that ground." *Maldonado v. City of Altus*, 433 F.3d 1294, 1302–03 (10th Cir. 2006). Here, the Hubbells' response to the Bank's summary-judgment motion directly addressed the issue of the falsity of Cox's alleged promises when they were made, and the Hubbells devote two sentences to the issue in their opening brief on appeal. Our affirmance therefore does not blindside them.

That leaves one further possible misrepresentation claim. As noted in our initial discussion of the Hubbells' misrepresentation causes of action, they may be contending that the Bank's statements recommending CBC were affirmative misrepresentations. But if so, they have failed to brief the issue adequately. They present no argument or evidence that the recommendations were in any respect false except insofar as some information was not disclosed. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (absence of developed argument waives issue for appellate review). We therefore restrict our attention to the alleged failures to disclose.

### 2. Fraudulent Nondisclosure

The Hubbells' opening brief points to four alleged fraudulent nondisclosures: (1) the failure to disclose the Bank's existing relationship with CBC; (2) the failure to disclose that the Bank had not received the necessary building permits; (3) the failure to disclose that the Bank would not be exercising discretion to inspect the Hubbells' construction and oversee disbursements of the loan proceeds; and (4) the failure to disclose CBC's banking irregularities.

Under Colorado law, "[t]o prevail on a claim for fraudulent nondisclosure, a plaintiff must demonstrate . . . that the defendant failed to disclose a past or present fact that he or she had a duty to disclose, with intent to induce the plaintiff to take a course of action he or she would not otherwise have taken, and that plaintiff justifiably relied on the omission." *Wisehart v. Zions Bancorporation*, 49 P.3d 1200, 1204 (Colo. Ct. App. 2002). "A defendant has a duty to disclose to a plaintiff with whom he or she deals material facts that in equity or good conscience should be disclosed." *Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.*, 965 P.2d 105, 111 (Colo. 1998) (internal quotation marks omitted). The Colorado Supreme Court has stated that "[t]o determine whether the circumstances of a particular case give rise to a duty to disclose in 'equity or good conscience,' the Restatement (Second) of Torts § 551(2) provides helpful guidance." *Id.* Section 551(2) provides:

> One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

(d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

The district court disposed of the Hubbells' failure-to-disclose claims on the ground that the Hubbells had alleged insufficient facts to demonstrate that the Bank owed them a fiduciary or confidential duty other than its duties under the Loan Agreement. The Hubbells raise two objections to the ruling: (1) that they did show that the Bank owed them a fiduciary or confidential duty requiring it to disclose the information; and (2) that the district court failed to address the other circumstances that can give rise to a duty to disclose. We start with their second objection.

The Hubbells argue that "Colorado law recognizes six different means to establish a duty to disclose, only one of which is the existence of a confidential or

fiduciary relationship." Aplt. Br. at 37. In support, they cite the Colorado Civil Jury Instructions—which largely track Restatement § 551(2).[**] They assert that

> [a]ny of the five alternative circumstances [other than the existence of a confidential or fiduciary relationship] could be found to apply to the Bank's habit of making selective representations while withholding other relevant information; therefore, [the] Hubbells have a viable nondisclosure claim regardless of whether they had a confidential or fiduciary relationship with Bank.

Aplt. Br. at 38. Although the Hubbells are correct that Colorado law recognizes more than one circumstance giving rise to a duty to disclose, their brief provides absolutely no further discussion of the five alternative circumstances. They have

---

[**]Colorado Civil Jury Instruction 19:5 states:

The defendant had a duty to disclose material facts if (he)(she) knew about them and if:
(1) the defendant and the plaintiff were in a confidential or fiduciary relationship or
(2) the defendant communicated some facts, but not all material facts, knowing that they would create a false impression in the mind of the plaintiff or
(3) the defendant knew that by his [or] her own unclear or deceptive words or conduct that he [or] she created a false impression of the actual facts in the mind of the plaintiff or
(4) the defendant knew that the plaintiff could not discover the facts for himself [or] herself or
(5) the defendant communicated material facts that were true or that he [or] she believed were true at the time they were communicated. Later, the defendant learned that the material facts were not [or] no longer true and knew that the plaintiff was acting under the impression that the facts were true or
(6) the defendant promised to perform an act or communicated an intention to perform an act knowing that the undisclosed facts made his [or] her performance unlikely.

(brackets and parentheses omitted)

-24-

not suggested, much less explained, which of the five circumstances arose during their relationship with the Bank, or how a specific circumstance led to a duty to disclose a particular item of information. Their brief thus does not adequately present for review a contention that the Bank had a duty to disclose under any of the five alternative circumstances. Appellants must do more than identify an issue; they must explain why it has merit. *See Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1175 (10th Cir. 2002) ("We do not consider merely including an issue within a list to be adequate briefing.")

To be sure, there is one situation in which the Hubbells would have no burden to show the merits of a nondisclosure claim based on one or more of the five alternative circumstances. If they had raised such a claim in district court and the Bank's motion for summary judgment had not presented argument and evidence showing that the claim lacked merit, summary judgment would have been inappropriate. After all, it is not the party opposing summary judgment that has the burden of justifying its claim; the movant must establish the lack of merit. *See* Fed. R. Civ. P. 54(C).

But the Hubbells did not raise such a claim below. The Hubbells' counterclaim for fraudulent nondisclosure, after a paragraph incorporating the previous 36 paragraphs of the counterclaim, states:

> 38.    [Bank] discovered material information, unknown to the Hubbells, about CBC and its principals that it *had a duty to disclose due to the special relationship* that existed between the Bank and the Hubbells.

-25-

39. Despite its duty to disclose all material information regarding CBC and its principals to the Hubbells, [Bank] failed to do so or provided incomplete and misleading information that justifiably induced the Hubbells to continue to use the services of CBC on the Project.

40. As a result of the Bank's failure to disclose information it had relating to CBC and its principals, the Hubbells have been damaged in an amount to be proven at trial.

Aplt. App. at 91 (emphasis added). None of the five alternative circumstances supporting a nondisclosure claim is based on a "special relationship." One can naturally infer that the Hubbell's counterclaim is relying solely on the existence of a "confidential or fiduciary relationship." Colo. Civ. J. Instr. 19:5(1) (brackets omitted). The Bank so interpreted the counterclaim and stated in its summary-judgment motion:

[The Hubbells] assert that [the] Bank had a duty to disclose information regarding CBC and its principals with respect to their business and personal financial practices. However, as set forth above, Defendants can not establish that Alpine Bank was Defendants' fiduciary—a necessary showing to provide a duty independent of those provided in the contracts between the parties.

Aplt. App. at 123.

The Hubbells' response to the Bank's summary-judgment motion did not contest the Bank's statement regarding the necessity of a fiduciary relationship. The closest that the response came to a reference to the alternative circumstances supporting a fraudulent-nondisclosure claim was a citation (the third in a string cite) to Colorado Civil Jury Instruction 19:5 with the parenthetical "(duty to disclose material information if falsehood later discovered)." *Id.* at 231. But the

-26-

response does not develop an argument on that proposition. We find nowhere, for example, a contention that the Bank made a representation, later discovered it was false, and then violated this duty to disclose by not informing the Hubbells of the falsity. The Hubbell's failure in this regard is particularly significant because the complaint itself did not assert such a theory of liability. If the Hubbell's response to the Bank's summary-judgment motion intended to add an additional theory, the statement of the new theory needed to be much more developed and the addition needed to be explicit.

Thus we will address only whether the Bank had a duty to disclose information because of the existence of a fiduciary relationship or relation of confidence with the Hubbells—the only circumstance that was adequately briefed.

We affirm the district court's decision that the Bank did not have a relation of trust or confidence with the Hubbells. Under Colorado law, "no per se fiduciary relationship exists by virtue of the borrower-lender relationship between a bank . . . and a customer of the bank." *First Nat'l Bank v. Theos*, 794 P.2d 1055, 1060 (Colo. Ct. App. 1990); *see Premier Farm Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504, 523 (Colo. Ct. App. 2006) ("In the absence of special circumstances, the relationship between a lending institution and its customer is merely one of creditor and debtor.") As the Hubbells state in their opening brief on appeal, they must establish something more—namely, that "(1) [they] actually reposed a special trust or confidence in the [Bank]; (2) such trust was justifiable;

-27-

and (3) the [Bank] either invited or ostensibly accepted the trust imposed." Aplt. Br. at 40 (citing *Theos*, 794 P.2d at 1061 ("The party claiming a confidential relationship must show . . . that a special trust or confidence was in fact reposed, that its reposition was justifiable, and that the other party either invited or ostensibly accepted the trust imposed.")).

The Hubbells have failed to show any acceptance by the Bank of a relation of trust or confidence on which the Hubbells could rely. In our discussion of the Hubbells' misrepresentation claim, we have already explained that the Hubbells could not reasonably rely on the Bank's advertising slogan that it would "take care of everything else." Thus, the slogan did not create a relation of trust or confidence.

Nor did any statements to the Hubbells by Cox or other bank officers before the Loan Agreement was entered into. Until that agreement was effective, the Bank could hardly have had a duty to the Hubbells regarding overseeing the construction or CBC (which was not even selected as the contractor until the day after execution of the Loan Agreement). And once the Hubbells signed the Loan Agreement, they were clearly on notice, from the terms of the Limitation of Responsibility provision, that the Bank had not accepted any position of trust or confidence; on the contrary, that provision unambiguously relieved the Bank of any duties on which the Hubbells claim reliance. To be sure, Bank officers

-28-

responded to the Hubbells' inquiries regarding CBC. But a willingness to answer questions does not in itself create a relation of trust or confidence.

All this is not to say that there exists no legal theory under which the Bank may have been liable for not disclosing certain information to the Hubbells. It is not our task, however, to construct the Hubbells' theories and arguments for them. Based on the arguments that they have properly presented to this court, we hold that the district court committed no error in rejecting their nondisclosure claims.

## C. Colorado Consumer Protection Act

In a perfunctory paragraph of their opening brief, the Hubbells contend that two of the Bank's representations violated the Colorado Consumer Protection Act (CCPA), Colo. Rev. Stat. §§ 6-1-101 to -1120 (2008)—namely, (1) the advertising slogan, "So . . . you're about to buy a new home, or build one. You concentrate on your dream. We'll take care of everything else," Apt. App. at 245, and (2) assistant vice-president Cox's statement to all borrowers that the Bank would oversee construction. "The CCPA was enacted to regulate commercial activities and practices which, because of their nature, may prove injurious, offensive, or dangerous to the public." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146 (Colo. 2003) (internal quotation marks omitted). To prevail on their CCPA claim, the Hubbells must show:

> (1) that [the Bank] engaged in an unfair or deceptive trade practice;
> (2) that the challenged practice occurred in the course of [the Bank's]

business, vocation or occupation; (3) that it significantly impacts the public as actual or potential consumers of the [Bank's] goods, services or property; (4) that [the Hubbells] suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused [the Hubbells'] injury.

*Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998).

We can quickly dispose of the CCPA claim based on the Bank's advertising slogan. "[T]he CCPA does not, as a matter of law, make actionable a statement which would otherwise be mere puffery." *Park Rise Homeowners Ass'n, Inc. v. Resource Const. Co.*, 155 P.3d 427, 435 (Colo. Ct. App. 2006). Because we have already determined that the advertising slogan was puffery, we affirm summary judgment on this claim.

We also affirm the district court's ruling that Cox's precontract promise to oversee construction did not violate the CCPA. We agree with the court below that the Hubbells did not demonstrate that this representation had a significant public impact.

To determine whether a practice challenged under the CCPA significantly impacts the public, courts should consider:

(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future.

*Rhino Linings*, 62 P.3d at 149. Cox's testimony supports the inference that the representation she made to the Hubbells was made to all potential borrowers. But

the Hubbells have not provided us with evidence that this promise has harmed other borrowers in the past or is likely to do so in the future. In particular, the Hubbells have not shown that any significant number of people taking out construction loans would be dependent on a bank to be sure that the contractor was proceeding properly. We note that the Loan Agreement signed by the Hubbells contemplates that the borrower will have an architect. *See* Aplt. App. at 60 ("Borrower shall have furnished in form and substance satisfactory to Lender an executed copy of the Architect's Contract and an executed copy of the Construction Contract."). And given the amount of money required to build a home, one would expect that a borrower who is totally relying on the Bank would look in the loan agreement for confirmation of Cox's promise and would inquire about Cox's promise if the language in the agreement contained anything like the Limitation of Responsibility provision in the Hubbells' Loan Agreement. Perhaps our assumptions about typical behavior are incorrect, but we are unwilling to presume the contrary in the absence of evidence from the Hubbells. The record includes no "evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 156 (Colo. 2007).

Accordingly, we affirm summary judgment on the Hubbells' CCPA claims.

**D.    Alleged Procedural Errors**

Finally, the Hubbells complain about (1) the district court's failure to grant their motions under Federal Rule of Civil Procedure 56(f) for additional time to conduct discovery before responding to the Bank's motion for summary judgment and (2) the district court's failure to review the magistrate judge's orders quashing a subpoena and denying the Hubbells' motion to add two causes of action to their counterclaim. We hold that the district court did not commit reversible error.

### 1. Rule 56(f) Motions

As part of their discovery efforts in district court, the Hubbells requested the Bank to produce internal emails regarding the Bank's relationship with them and with CBC. The Bank failed to produce these emails. After the Bank moved for summary judgment on April 5, 2006, the Hubbells moved to compel production of the emails. Because their response to the summary-judgment motion was due on April 25, the Hubbells also moved the court under Rule 56(f) to extend the time to respond to the summary-judgment motion until the Bank produced the emails. The court granted the motion in part, extending the deadline to respond until May 1. But in their May 1 response the Hubbells included a renewed request under Rule 56(f) that the district court postpone ruling on the summary-judgment motion until the Bank produced the internal emails and the Hubbells completed taking depositions of Bank officers Cox, Scofield, and Fuller,

so that the Hubbells could supplement their response to the motion. The district court never addressed the second Rule 56(f) motion.

The Hubbells contend that the district court abused its discretion by denying their first request and by failing to rule on their second request under Rule 56(f). But the Hubbells have failed to show any prejudice from the district court's failure to grant them the relief they requested. The court did not decide the summary-judgment motion until March 2, 2007, ten months after the Hubbells' second Rule 56(f) motion. In the interim the Hubbells deposed two technical employees of the Bank who informed them that the desired internal emails were no longer retrievable, and the Hubbells withdrew their motion to compel production of the emails. Also, the Hubbells completed their depositions of Cox, Scofield, and Fuller. Thus, just as the Hubbells had requested, the court did not rule before they had completed their desired discovery. All the discovery referred to in both the Rule 56(f) motions had been completed (or withdrawn in the case of the request for emails) by December 6, 2006, about four months before the court ruled. Yet the Hubbells made no attempt to provide the district court with evidence from the new depositions that would support their opposition to summary judgment. Because the Hubbells suffered no prejudice from the district court's failure to grant the relief requested in the first Rule 56(f) motion or to rule on the second motion, we grant no relief. *See McInnis v. Fairfield Communities, Inc.*, 458 F.3d 1129, 1144–45 (10th Cir. 2006).

We are not persuaded otherwise by *Patty Precision v. Brown & Sharpe Manufacturing. Co.*, 742 F.2d 1260 (10th Cir. 1984), on which the Hubbells rely. In that case we reversed the district court's entry of summary judgment for the defendants because it had not expressly ruled on the plaintiff's Rule 56(f) motion. *Id.* at 1264–65. The Rule 56(f) motion had been filed in response to the defendants' motion for a protective order to stay discovery pending the disposition of their summary-judgment motion. *Id.* at 1263. The plaintiff had not pursued further discovery before the district court entered its ruling on the summary-judgment motion, and we said that it had been appropriate for the plaintiff to await the court's decision on the stay motion before proceeding with discovery. *Id.* at 1265. Thus, unlike in this case, the party seeking Rule 56(f) relief had not completed its desired discovery before the court granted summary judgment, and there would have been no basis for us to conclude that failure to rule on the Rule 56(f) motion had caused no prejudice.

### 2. Motions to Amend Counterclaim and Quash Subpoena

The Hubbells also contend that the district court abused its discretion by granting summary judgment without first ruling on their objections to the magistrate judge's orders granting the Banking Division's motion to quash the Hubbells' subpoena and denying the Hubbells' motion to add additional counterclaims. (After granting summary judgment, the district court entered a minute order declaring that the Hubbells' objections to both of the magistrate

judge's decisions were moot.)  We agree that the district court should have addressed the Hubbells' objections.  "Review of the magistrate judge's ruling is required by the district court when a party timely files written objections to that ruling."  *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997).  But, again, the Hubbells have failed to show prejudice.

With regard to the magistrate judge's ruling on the motion to quash, the Hubbells raise no argument on appeal that challenges the correctness of that ruling.  We can therefore presume that the district court would have affirmed it.  Moreover, the Hubbells did not ask the district court to delay ruling on summary judgment until it had ruled on their objection to the magistrate judge's ruling on the motion to quash.  They therefore cannot complain on appeal that the judge first granted summary judgment and then ruled that the challenge to the magistrate judge's ruling was moot.  The failure to grant unrequested relief is not error.  *See Glenn v. First Nat. Bank in Grand Junction*, 868 F.2d 368, 371 (10th Cir. 1989) (because the "[a]ppellant did not move the court for leave to amend the complaint[,] . . . the district judge committed no error in not ruling thereon.").

As for the magistrate judge's ruling that the Hubbells' motion to add additional counterclaims was untimely, the Hubbells have not argued, much less made a showing, that the amendment would have benefitted them.  Their proposed amendment would have added two causes of action.  The first was for breach of fiduciary duty.  But we have affirmed the district court's decision that the Bank

-35-

was not acting as a fiduciary of the Hubbells. Accordingly, that claim would have failed.

The second proposed counterclaim was for negligence. Yet it included no factual allegations other than to incorporate by reference the allegations in the original counterclaim. The Hubbells' motion to amend in district court indicated that the new negligence claim would add to the negligent-misrepresentation claim a claim that the Bank had acted negligently in inspecting construction and disbursing loan funds. But the Hubbells cannot recover from the Bank on account of its negligence unless that negligence violated a duty owed by the Bank to the Hubbells. *See Vigil v. Franklin*, 103 P.3d 322, 333 (Colo. 2004) (duty is an element of negligence claims). The Hubbells have failed to set forth the source of such a duty, and we see none. Perhaps a duty of this type could arise out of a contractual relationship, but hardly in the situation before us, where the contract explicitly disavows the duty in the Limitation of Responsibility provision.

Thus, the Hubbells suffered no prejudice from the district court's failure to rule on their objections to the magistrate judge's quashing the subpoena and refusing to allow addition of the two proffered counterclaims. The district court's failure does not entitle them to any relief.

## III. CONCLUSION

We AFFIRM the judgement below. We DENY the Hubbells' motion to file a supplemental appendix.