FILED
United States Court of Appeals
Tenth Circuit

July 22, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

RICK WILSON,

      Plaintiff - Appellant,

v.

VILLAGE OF LOS LUNAS; DENISE
WALKER, a police officer working for
the Los Lunas Police Department;
THOMAS TAYLOR, a police officer
working for the Los Lunas Police
Department,

      Defendants - Appellees.

No. 13-2203
(D.C. No. 1:10-CV-00237-KBM-ACT)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **MATHESON**, **ANDERSON**, and **PHILLIPS**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Rick Wilson appeals from the district court's grant of summary judgment to defendant police officers Denise Walker and Thomas Taylor on his claims alleged under 42 U.S.C. § 1983. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

### A. *Factual Background*

On July 13, 2009, Officer Walker stopped Mr. Wilson for a stop sign violation. She wrote him three citations, one for the stop sign violation and two more for lack of vehicle registration and proof of insurance. The parties dispute what happened during the stop.

According to Officer Walker, Mr. Wilson was agitated when she first approached his car, causing her to call for backup. Sergeant Taylor arrived as she was completing the paperwork. When the officers approached Mr. Wilson's car to give him the citations, he was argumentative and more agitated. The officers ordered him to exit his car, and he refused. Sergeant Taylor reached into the vehicle to remove him, and he physically resisted. He struggled with both officers, knocking Officer Walker to the ground. The officers subdued and arrested him.

In contrast, Mr. Wilson contends he was calm and cooperative, and that Officer Walker was agitated from the beginning of the stop. He posits that after Sergeant Taylor arrived, one of the officer's belt tapes recorded a conversation between the officers. During the conversation, Officer Walker inappropriately called Mr. Wilson names. When she gave him the citations, he complained to the officers

about a prior experience with the police department. He disputes that he refused to exit the vehicle, and alleges Sergeant Taylor used inappropriate force to remove him. He also states he never intentionally struck either officer.[1]

## B. *Procedural History*

Mr. Wilson brought § 1983 claims against the officers for violation of his Fourth, Fourteenth, and First Amendments rights.[2] The officers promptly moved for summary judgment.

Mr. Wilson responded, arguing under former Fed. R. Civ. P. 56(f) (now Rule 56(d))[3] that he needed to take the defendants' depositions and obtain a transcribable version of the belt tape and certain other information to prepare his opposition to summary judgment. He submitted his counsel's affidavit regarding the need for discovery and a copy of Officer Walker's police report regarding the incident. Mr. Wilson did not submit an affidavit from himself. The response acknowledged that he could "certainly submit an affidavit to dispute the allegation

---

[1] We note that Mr. Wilson did not set forth his version of events in any detail or offer any supporting evidence before the district court granted summary judgment to the officers. These facts are taken from his deposition and a transcript of the belt tape, which he submitted to the court after the grant of summary judgment.

[2] He also brought state law claims against the officers and the municipality, but the § 1983 claims are the only ones now under review.

[3] During the litigation, Rule 56(f) became Rule 56(d). We will use "Rule 56(f)" when referring to decisions and filings before the amendment, including Mr. Wilson's filing and the district court's rulings regarding it, and "Rule 56(d)" when referring to the rule generally.

that he refused to exit his vehicle," but his "desire [was] to respond to the summary judgment motion with one factual proffer at [a later] date, rather than respond piece meal by submitting his affidavit now, then submitting a transcript of the belt tape, then submitting deposition transcripts of the officers, etc." Aplt. App. at 33. It continued, "[i]f this suggested procedure is unacceptable to the Court, Plaintiff would ask that he [be] permitted to supplement the record with his affidavit and the belt tape in his possession prior to the Court ruling on this motion for summary judgment." *Id.* at 33-34. The district court did not immediately rule on the Rule 56(f) request.

The next week, the magistrate judge set a scheduling order. The order did not set a date for Mr. Wilson to respond to the pending summary judgment motion. The parties began discovery, and Mr. Wilson took the officers' depositions. The magistrate judge twice extended the pre-trial deadlines at Mr. Wilson's request.

About three months after the officers' depositions and seven months after the Rule 56(f) request, but before the extended discovery deadline, the district court issued an order simultaneously addressing the Rule 56(f) request and the motion for summary judgment. The court concluded that no further discovery was necessary because Mr. Wilson had sufficient time to transcribe the belt tape and he had by then taken the officers' depositions. The court also faulted the Rule 56(f) request, criticizing counsel for not providing Mr. Wilson's affidavit and instead seeking a further opportunity to submit that evidence. The court granted summary judgment to the defendants.

Four weeks later, Mr. Wilson filed a "Motion to Supplement the Record," stating "his belief that the Court, in finding that Plaintiff's Rule 56(f) showing was inadequate, should have exercised its discretion to allow Plaintiff to supplement the record prior to entering judgment against Plaintiff." Aplt. App. at 76. He attempted to controvert the officers' statement of material facts and presented transcripts of his own deposition, the officers' depositions, and the belt tape.

The district court denied the motion to supplement, noting that "all of the information with which Plaintiff seeks to supplement the record would have been available to him well before the Court's Summary Judgment Ruling . . . . Further, there is no provision in the Federal Rules of Civil Procedure for the sort of supplementation that Plaintiff seeks." *Id.* at 133. The court concluded, "[t]o the extent that the record in this case does not include information relevant to summary judgment, this is because Plaintiff failed to properly call such information to the Court's attention." *Id.*

## II. **DISCUSSION**

### A. *Rule 56(f) Request for Discovery*

Mr. Wilson argues the district court erred in granting summary judgment without first ruling on his Rule 56(f) request. He asserts that he properly supported his request by providing his counsel's affidavit stating what discovery was needed and why, and he points out the magistrate judge granted his requests to extend the discovery period. Based on these circumstances and the discovery extensions,

"counsel submits that it was reasonable for Plaintiff to believe that he would have some opportunity to supplement the record prior to the District Court's consideration of the motion for summary judgment." Aplt. Br. at 32.

1. **Legal Background**

Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>     (1) defer considering the motion or deny it;
>     (2) allow time to obtain affidavits or declarations or to take discovery; or
>     (3) issue any other appropriate order.

"When a party files an affidavit under Rule 56[(d]) for additional discovery time, the party invokes the trial court's discretion. Thus, unless the trial court abuses its discretion, its determination will not be disturbed." *Patty Precision v. Brown & Sharpe Mfg. Co.*, 742 F.2d 1260, 1264 (10th Cir. 1984).

By not ruling on the Rule 56(f) request for approximately seven months, the district court effectively deferred ruling on the summary judgment motion and allowed time for the requested discovery. The court, however, did not formally address the Rule 56(f) request until it granted summary judgment. Two of this court's opinions inform our decision as to whether the district court thus abused its discretion.

In *Patty Precision,* defendants simultaneously filed motions for summary judgment and a protective order, and plaintiff responded under Rule 56(f). 742 F.2d

- 6 -

at 1263.  Although the motions were pending for more than two years, plaintiff

conducted no discovery because defendants indicated that they would not participate

while their motion for a protective order was pending.  *Id.* at 1264.  The district court

granted summary judgment without ruling on the Rule 56(f) request.  *Id.*  On appeal,

we said, referring to Rule 56(f) requests, "the trial judge's discretion will rarely be

disturbed.  However, in this case the trial court, although aware of the Rule 56(f)

affidavit, did not exercise its discretion."  *Id.* at 1265.  Although defendants argued

that plaintiff had ample opportunity to conduct discovery while the motions were

pending, we said this argument ignored the pending motion for a protective order.

*Id.*  "Because of the uncertainty created by the court's failure to exercise its

discretion, the likelihood of prejudice to the plaintiff and the current status of this

case, we reverse the court's grant of summary judgment and remand for the trial

court to expressly consider plaintiff's Rule 56(f) affidavit."  *Id.*

In *Alpine Bank v. Hubbell*, 555 F.3d 1097 (10th Cir. 2009), plaintiff moved for

summary judgment.  *Id.* at 1103.  Defendants filed a Rule 56(f) request that the

district court did not immediately address.  *See id.* at 1103-04.  They eventually

completed the discovery they had sought in their Rule 56(f) request.  *See id.* at 1104.

But they did not file a supplemental response to the summary judgment motion.

Several months later, the court granted the motion.  *See id.*  We held the district court

did not commit reversible error:

> [J]ust as [defendants] had requested, the court did not rule before they
> had completed their desired discovery.  All the discovery referred to in

[defendants'] Rule 56(f) motions had been completed . . . about four months before the court ruled. Yet [defendants] made no attempt to provide the district court with evidence from the new depositions that would support their opposition to summary judgment.

*Id.* at 1114. We concluded that defendants "suffered no prejudice" from the district court's failure to rule on their Rule 56(f) motion. *Id. Alpine Bank* said that in *Patty Precision*, "unlike in this case, the party seeking Rule 56(f) relief had not completed its desired discovery before the court granted summary judgment, and there would have been no basis for us to conclude that failure to rule on the Rule 56(f) motion had caused no prejudice." *Id.*

2. **Analysis**

Although a district court should decide a Rule 56(d) request before deciding summary judgment, *see* 11 Moore's Federal Practice, § 56.101[4] (Matthew Bender 3d Ed.) (noting that the courts and parties may avoid duplicative effort if the court quickly rules on a Rule 56(d) motion); *Patty Precision*, 742 F.2d at 1265 (noting that in that circumstance, "the correct disposition of the matter merely require[d] the court to rule on the motions pending before it"), we cannot say the district court abused its discretion here. This case is more like *Alpine Bank* than *Patty Precision*. As in *Alpine Bank*, Mr. Wilson was able to conduct discovery and to obtain the materials he sought in his Rule 56(f) request several months before the district court ruled, yet he did not submit the comprehensive response to the summary judgment motion he mentioned in his Rule 56(f) request. Mr. Wilson should at least have submitted his own affidavit in response to the motion for summary judgment:

- 8 -

> [T]he fact that a Rule 56(d) motion is pending does not, by itself, defer the due date for the response or relieve the party of complying with Rule 56(c) in any response that it might file.  If a party files a Rule 56(d) motion in advance but does not later file a timely response to the summary judgment motion itself, and the court then denies the Rule 56(d) motion, the party may find itself subject to the "considered undisputed" provisions of Rule 56(e).  Thus, unless the court acts on the motion quickly or defers the response date, the party will find itself, as a practical matter, having to prepare a response with whatever material is then available.

11 Moore's Federal Practice, at § 56.101[4] (internal citations and footnotes omitted).

We recognize the magistrate judge had granted Mr. Wilson's motions to extend pre-trial deadlines, and the discovery deadline therefore had not run before the district court granted summary judgment to defendants.  Mr. Wilson sought the extra time for his expert witness to evaluate the evidence he had gathered.[4]  On appeal, he does not argue he was prejudiced from being unable to submit a report from that expert.  Also, despite having taken the officers' depositions and having transcribed the belt tape, he does not argue he was unable to obtain the other materials described in his Rule 56(f) response.  The district court could have notified him that it intended to rule, but it did not abuse its discretion to decide the summary judgment motion after so much time had passed.

For these reasons, the district court did not abuse its discretion when it simultaneously decided the Rule 56(f) request and the motion for summary judgment.

---

[4] Mr. Wilson's motions for extensions of the pre-trial deadlines were not included in appellant's appendix, but "[p]arts of the record may be relied on by the court or the parties even though not included in the appendix."  Fed. R. App. P. 30(a)(2).

B. *Summary Judgment*

Mr. Wilson argues summary judgment for the defendants was not justified on the record before the district court when it made its ruling. Our review is de novo, viewing the evidence in the light most favorable to Mr. Wilson. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 766 (10th Cir. 2013).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Schneider*, 717 F.3d at 767 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Even if the opposing party does not respond to the summary judgment motion, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law. If it has not, summary judgment is not appropriate." *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002). Because a failure to respond means

the facts are considered undisputed, "[t]he court should accept as true all material facts asserted and properly supported in the summary judgment motion. But only if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment." *Id.*

1. **Fourth Amendment Claim**

The Fourth Amendment protects persons "against unreasonable searches and seizures." U.S. Const. Amend. IV. Mr. Wilson does not challenge the initial traffic stop. He asserts the Fourth Amendment violation occurred when the officers arrested him without probable cause.[5] He contends the officers failed to show their order to exit the car was lawful because the traffic stop was over by the time of the order. "[T]he officers had effectively set the conditions for Wilson's release by preparing citations for Wilson's signature. Once setting conditions for Wilson's release, Defendants were required to release him from custody and any further detention violated the Fourth Amendment reasonableness requirement." Aplt. Br. at 18-19.[6]

---

[5] The Fourth Amendment is applicable to the states through the Fourteenth Amendment. *See Mapp v. Ohio*, 367 U.S. 643, 650, 655 (1961).

[6] We recognize that in addition to asserting the officers could lawfully order Mr. Wilson out of the car, the officers' brief in support of summary judgment argued that Mr. Wilson could have been arrested for committing a traffic violation. But the evidence does not support the argument that the arrest was for the traffic violation or failure to present paperwork. *See* Aplt. App. at 30 (Officer Walker's affidavit stating that "[t]he decision to arrest [Mr. Wilson] was after he refused to exit his vehicle and resisted being removed from the vehicle"); *id.* at 43 (criminal complaint listing offenses as battery upon a peace officer and resisting, evading, or obstructing an officer). We therefore limit our analysis to the arrest of Mr. Wilson for failing to exit the car and for physically resisting the officers.

- 11 -

According to the Supreme Court, an officer may lawfully order occupants to exit a vehicle during a traffic stop.  *See Maryland v. Wilson*, 519 U.S. 408, 415 (1997); *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977).  Mr. Wilson asserts the order to exit was unreasonable because it followed completion of the stop.  Even viewed in the light most favorable to Mr. Wilson, the facts before the district court do not establish the stop had been completed.

New Mexico requires officers to have the motorist sign the citation(s) before being released from a traffic stop.  *See* N.M. Stat. Ann. § 66-8-123.  The officers' statement of undisputed facts asserts that "[d]uring the time Officer Walker was attempting to give Mr. Wilson the traffic citation he began to argue with Officer Walker."  Aplt. App. at 19.  Officer Walker's affidavit asserts that the officers approached Mr. Wilson's car with the citations, and "he immediately became argumentative and further agitated."  *Id.* at 30.  These facts do not indicate that Mr. Wilson signed the citations before the officers ordered him out of the car.  Further, his initial district court response to the summary judgment motion did not assert he had signed the citations, and actually indicates to the contrary:  "from the belt tape Plaintiff retrieved prior to filing suit, it is clear that Defendant Walker was preparing a uniform citation.  Also clear is that Defendants were approaching the car

with the intention of presenting the citation to Plaintiff for signature. Plaintiff said something to Defendants. Defendants ordered Plaintiff from the car." *Id.* at 38.[7]

The record before the district court showed no genuine dispute as to whether the traffic stop had been completed. On those facts, under *Wilson* and *Mimms*, the officers had the authority to order Mr. Wilson out of the car. The evidence further supported the officers' position that Mr. Wilson violated N.M. Stat. Ann. §§ 30-22-24 (battery upon a peace officer) and 30-22-1 (resisting, evading, or obstructing an officer). *See* Aplt. App. at 30 (Officer Walker's affidavit that Mr. Wilson refused the officers' orders to exit the vehicle, he resisted Sergeant Taylor, then he "struggled with both Sergeant Taylor and myself, and at one point [he] knocked me to the ground with his struggles"). Because the record shows the officers had probable cause to arrest Mr. Wilson, the district court did not err in granting summary judgment to the officers on the Fourth Amendment claim.

2. **Fourteenth Amendment Claim**

In relevant part, the Fourteenth Amendment precludes states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV § 1. Mr. Wilson contends his arrest deprived him of a liberty interest created by N.M. Stat. Ann. § 66-8-123, which provides for a motorist's release once he or she has signed a traffic citation. But this provision is not applicable.

---

[7] Mr. Wilson's supplemental response did assert that Officer Walker handed him the citations and that he signed them before he said anything to her. But this assertion came too late—after the court granted summary judgment.

Mr. Wilson had not signed the citations before he was arrested. He was not arrested for the stop sign violation or for failing to produce the appropriate paperwork. He was arrested for failing to obey the officers' orders to exit the vehicle and for physically resisting them. We therefore affirm summary judgment on his Fourteenth Amendment claim.[8]

3. **First Amendment Claim**

Mr. Wilson alleges the officers violated the First Amendment right to free speech because they arrested him in retaliation for his complaints about his previous experience with the police.[9] In response, the officers contend that as an element of a First Amendment retaliatory arrest claim, Mr. Wilson must show lack of probable cause for the arrest. As discussed above, Mr. Wilson cannot make such a showing because the officers had probable cause to arrest him. In the alternative, the officers claim qualified immunity because it was not clearly established at the time of

---

[8] In his opening brief Mr. Wilson fails to dispute the district court's understanding of his Fourteenth Amendment claim as a substantive due process claim, and its determination that "the Supreme Court has held that the Fourth Amendment should govern a claim such as this, which arises from an arrest or seizure. . . . Having failed to demonstrate any violation of the Fourth Amendment, Plaintiff cannot now proceed with the same claim pursuant to the Fourteenth Amendment." Aplt. App. at 70 (citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994)). He therefore has forfeited the opportunity to challenge this separate ground for affirming the district court's decision on the Fourteenth Amendment claim. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007).

[9] First Amendment protection for speech is applicable to the states through the Fourteenth Amendment. *See Fiske v. Kansas*, 274 U.S. 380, 385-87 (1927); *Gitlow v. New York*, 268 U.S. 652, 666 (1925).

- 14 -

Mr. Wilson's arrest that a retaliatory arrest supported by probable cause violates the First Amendment.

As we explain below, it is not clear whether a First Amendment retaliatory arrest claim requires a plaintiff to show a lack of probable cause. It therefore appears qualified immunity is a more appropriate basis for deciding this appeal. Although the district court's judgment was not based on qualified immunity, the officers raised the argument in district court, and we may affirm on any ground supported by the record. *See Harman v. Pollock*, 586 F.3d 1254, 1259 (10th Cir. 2009).

A claim of qualified immunity requires Mr. Wilson to show (1) the officers violated a constitutional right, and (2) the right was clearly established at the time. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). It is within our discretion to decide which prong to tackle first. *See id.* at 236, 242. Based on recent Supreme Court precedent, Mr. Wilson cannot show that in July 2009 it was clearly established that a retaliatory arrest based on probable cause would violate the First Amendment. We therefore affirm based on the "clearly established" prong of qualified immunity.

In 1990, we held that a plaintiff bringing a First Amendment claim for retaliatory arrest was not required to show that the defendants lacked probable cause. *See DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir. 1990). In April 2006, the Supreme Court held that to proceed with a claim for retaliatory *prosecution*, a plaintiff must plead and prove an absence of probable cause to support the charge. *Hartman v. Moore*, 547 U.S. 250, 252, 265-66 (2006). Because *Hartman* did not

involve a claim for retaliatory *arrest*, it was not clear whether its rationale applied in that context.

Several years later—and after the events of this case—this court concluded that *Hartman* did not apply to a claim for retaliatory arrest. *See Howards v. McLaughlin*, 634 F.3d 1131, 1148 (10th Cir. 2011). *Howards* held that *Hartman* did not supplant *DeLoach*, and concluded that when Mr. Howards was arrested in June 2006, "it was clearly established that an arrest made in retaliation of an individual's First Amendment rights is unlawful, even if the arrest is supported by probable cause." *Id. Howards* therefore allowed the plaintiff "to proceed with his First Amendment retaliation claim notwithstanding probable cause existed for his arrest." *Id.* at 1149.

The Supreme Court granted certiorari and reversed. *Reichle v. Howards*, 132 S. Ct. 2088, 2093, 2097 (2012). The Court declined to decide "whether a First Amendment retaliatory arrest claim may lie despite the presence of probable cause to support the arrest." *Id.* at 2093. Instead, it held this court erred in concluding the law was clearly established in June 2006. *See id.* at 2094-95, 2097. Specifying that "the right in question is not the general right to be free from retaliation for one's speech, but the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause," the Court noted that it "has never held that there is such a right." *Id.* at 2094. It further stated that in June 2006, "*Hartman*'s impact on the Tenth Circuit's precedent governing retaliatory arrests was far from

- 16 -

clear.  Although the facts of *Hartman* involved only a retaliatory prosecution, reasonable officers could have questioned whether the rule of *Hartman* also applied to arrests."  *Id.* at 2095.  "[F]or qualified immunity purposes, at the time . . . it was at least arguable that *Hartman*'s rule extended to retaliatory arrests."  *Id.* at 2096.  Accordingly, the Court held that the defendant officers were entitled to qualified immunity.  *Id.* at 2097.

*Reichle* states that when Mr. Howards was arrested in June 2006, "*Hartman* [had] injected uncertainty into the law governing retaliatory arrests."  132 S. Ct. at 2096.  This court did not address that uncertainty in a published opinion until *Howards*, issued in March 2011, long after the events underlying this appeal.  And the next year, *Reichle* reversed *Howards* while declining to determine whether there is a First Amendment right to be free from a retaliatory arrest otherwise supported by probable cause.  *Reichle* therefore compels the conclusion that the law as to First Amendment retaliatory arrest in the presence of probable cause was no more clearly established in July 2009, when Officer Walker stopped Mr. Wilson, than it was in June 2006.

As discussed above, the record before the district court showed probable cause to arrest Mr. Wilson for violating N.M. Stat. Ann. §§ 30-22-24 and 30-22-1.  We need not decide whether *DeLoach* survives *Hartman*.  It is enough to know that in July 2009 it was not clearly established in this circuit that there is a First Amendment

right to be free from retaliatory arrest when the arrest is supported by probable cause. The officers are entitled to qualified immunity.[10]

## III. **CONCLUSION**

The judgment of the district court is affirmed.

ENTERED FOR THE COURT,


Scott M. Matheson, Jr.
Circuit Judge

---

[10] This court recently came to the same conclusion in an unpublished decision, *Moral v. Hagen*, 553 F. App'x 839, 840 (10th Cir. 2014). "Unpublished decisions are not precedential, but may be cited for their persuasive value." 10th Cir. R. 32.1(A).