Raymond BOYD and Joyce Boyd, Plaintiffs–Appellants,

v.

A.O. SMITH HARVESTORE PRODUCTS, INC., Defendant–Appellee.

Nos. 85CA1063, 86CA0526.

Colorado Court of Appeals, Div. III.

Jan. 23, 1989.

Rehearing Denied March 9, 1989.

Certiorari Denied July 17, 1989.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const., art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

Law Offices of E. Gregory Martin, E. Gregory Martin and Wilfred R. Mann, Boulder, for plaintiffs-appellants.

Howe & Porter, P.C., Michael S. Porter, Denver, and Francis A. Benedetti, Wray, for defendant-appellee.

VAN CISE, Judge.

In this products liability action, plaintiffs, Raymond and Joyce Boyd (buyers), appeal the dismissal of various claims and a directed verdict on other claims entered on behalf of defendant, A.O. Smith Harvestore Products, Inc. (the manufacturer). We affirm in part and reverse in part.

This case arises out of the buyers' purchase of two grain silos that were produced by the manufacturer and sold and assembled by co-defendant Big Horn Harvestore Systems, Inc. (the seller), an independent dealer who is not a party to this consolidated appeal. The sale was made pursuant to a written sales contract which included a warranty and disclaimers by the seller and the manufacturer. The contract limited the manufacturer's remedial obligation for any product defects to the repair or replacement of any defective product or part.

The purchased silo systems were represented as being "oxygen-limiting" by means of a breather system that is supposed to limit the amount of oxygen in the silo and thereby permit feed to be stored in the silo for long periods without any deterioration in quality.

In late 1978, the first silo (silo 1) was erected on the buyers' farm, and they began storing corn in it. In spring 1979, they noticed some problems with the condition of the corn coming out of the silo. They bought a second silo (silo 2) in September 1979 since, as they testified, they attributed the problems with the corn in silo 1 to repairs that were needed. However, despite repairs, problems with the quality of the stored corn continued.

In March 1983, the buyers filed this action, asserting numerous tort and contract claims against the seller and the manufacturer. Among other defenses, the manufacturer pled the bar of the three-year statute of limitations then in effect, Colo.Sess. Laws 1977, ch. 199, § 13-80-127.5 at 819.

In June 1985 a trial was held on the issue of the statute of limitations. The trial court determined that all claims with respect to silo 1 were barred by the three-year statute, and dismissed those claims. The court also determined that the statute did not bar the claims as to silo 2. After the entry of a C.R.C.P. 54(b) order, the buyers initiated an appeal of the dismissal of the silo 1 claims for deceit, negligent misrepresentation, strict product liability,

negligence, and breach of repair warranty (Appeal No. 85CA1063).

As to the silo 2 claims, in November and December 1985, the court entered summary judgment against the buyers on their claims for breach of express warranty, breach of implied warranties, deceit, negligent misrepresentation, and negligence. After a trial in February 1986, the claims for breach of contract and exemplary damages were dismissed on the ground that the buyers had failed to give timely notice of the defects. The buyers then initiated an appeal of the dismissal of their silo 2 claims for deceit, negligent misrepresentation, and breach of express warranty (Appeal No. 86CA0526). The two appeals were consolidated for appellate review.

## I. Silo 1 (85CA1063)

### A.

■ The buyers contend the trial court erred in applying the products liability statute of limitations to bar their claims of deceit and negligent misrepresentation. They assert that these claims are governed by the fraud statute of limitations, § 13–80–109, C.R.S., and that a proper application of that statute precludes dismissal of these. We disagree.

Colo.Session Laws 1977, ch. 199, § 13–80–127.5(1) at 819 provides:

"Notwithstanding any other statutory provisions to the contrary, all actions except those governed by section 4–2–725, C.R.S. 1973 [four year statute of limitations for an action for breach of a contract for sale], brought against a manufacturer or seller of a product, regardless of the substantive legal theory or theories upon which the action is brought, for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design ... or the failure to warn or protect against a danger or hazard in the use, misuse, or unintended use of any product, or the failure to provide proper instructions for the use of any product shall be brought within three years after the claim for relief arises and not thereafter."

The statute was adopted as a part of a legislative package that provided for actions based upon injury or damage caused by defective products. *Stanske v. Wazee Electric Co.*, 722 P.2d 402 (Colo.1986). It is the "nature of the right sued upon and not necessarily the particular form of action or the precise character of the relief requested" that determines the applicability of a particular statute. *Persichini v. Brad Ragan, Inc.*, 735 P.2d 168 (Colo. 1987). By enacting this statute, "the legislature made manifest its intent to encompass all forms of product liability actions against manufacturers ... of products ... regardless of the substantive legal theory or theories upon which the action is brought." *Persichini, supra.*

The buyers' deceit and negligent misrepresentation claims are against a manufacturer and are founded on a fundamental design defect theory—as stated in their pleadings, "the design of the Harvestore silo [was] fundamentally flawed." Accordingly, the three-year products liability statute applies to these claims.

### B.

■ The buyers next contend that even if § 13–80–127.5 were the correct statute of limitations, the court erred in holding that it barred their deceit, negligent misrepresentations, strict product liability, and negligence claims. We agree.

The key question is when, under § 13–80–127.5, a "claim for relief arises." In *Housing Authority v. Leo A. Daly Co.*, 35 Colo.App. 244, 533 P.2d 937 (1975), this court, in interpreting an analogous statute (§ 13–80–127, C.R.S.) held that a claim arises when a plaintiff becomes aware of some damage and of the possibility that negligence was involved. It is not necessary to know the exact cause of the damage, just the possibility that a defect was involved. *See Housing Authority, supra.*

In *Criswell v. M.J. Brock & Sons, Inc.*, 681 P.2d 495 (Colo.1984), the supreme court interpreted a statute of limitations that required claims to be filed within two years "after a claim for relief arises." The court

found that the discovery of the physical manifestations of a defect is not necessarily concurrent with discovery of the defect itself. Rather, inquiry must be made about when the damage occurred as well as when plaintiffs discovered or, in the exercise of reasonable diligence, should have discovered the defect.

Applying the principles of these cases here, we conclude that the buyers' claims for relief arose when they knew or should have known that the damage to their corn was caused by a defect in the silo.

The trial court held that the period specified in the statute of limitations began to run in April or May 1979 when the buyers first discovered that some of the stored corn was damaged. It held that the buyers "did not have to know that the Harvestore products were causing their problems and their damages and their injuries." That is not the law.

Accordingly, the judgment dismissing these claims must be reversed and the cause must be remanded for a determination of when the buyers knew or should have known that damage to their corn was caused by a defect in silo 1.

## C.

■ The buyers contend the trial court erred in dismissing their claim for breach of the manufacturer's repair warranty on statute of limitations grounds (§ 4–2–725, C.R.S.). They argue that the repair warranty is subject to a "future performance" exception in § 4–2–725(2), C.R.S. We disagree.

Section 4–2–725, C.R.S., in effect at the time applicable here, stated in pertinent part:

"(1) An action for breach of contract for sale must be commenced within four years after the cause of action has accrued. This period of limitation may not be varied by agreement of the parties.

"(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made; except,

that *where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered.*" (emphasis supplied) *Cf.* § 4–2–725, C.R.S. (1988 Cum.Supp.).

For the future performance exception to apply, there must be a warranty that "explicitly extends to future performance of the goods." *Smith v. Union Supply Co.,* 675 P.2d 333 (Colo.App.1983). But whether a "repair and replace" warranty is a warranty of future performance has not previously been addressed by a Colorado appellate court.

Other jurisdictions which have addressed this issue have found that "a promise to repair is an express warranty that the promise to repair will be honored." *Mittasch v. Seal Lock Burial Vault,* 42 A.D.2d 573, 344 N.Y.S.2d 101 (1973). A repair or replace warranty does not warrant the product's performance in the future. Rather, it provides that if a product fails or becomes defective, the seller or manufacturer will repair or replace within a stated period. *Ontario Hydro v. Zallea Systems, Inc.,* 569 F.Supp. 1261 (D.Del. 1983).

Unlike a warranty to repair or replace, a warranty of future performance does not assume that the product will not perform and will need repair or replacement. *Fire District No. 9 v. American La France,* 176 N.J.Super 566, 424 A.2d 441 (1980); *Owens v. Patent Scaffolding Co.,* 77 Misc.2d 992, 354 N.Y.S.2d 778 (N.Y.Sup.Ct.1974); J. White & R. Summers, *Uniform Commercial Code* § 11–9 at 419 (2d ed.1980). Also, a warranty of future performance must expressly provide a guarantee that the product will perform as promised in the future. *Ontario Hydro, supra.*

"The key distinction between these two kinds of warranties is that a repair or replacement warranty merely provides a remedy if the product becomes defective, while a warranty for future performance *guarantees the performance* of the product itself for a stated period of time." *On-*

*tario Hydro, supra* (emphasis in the original).

Here, pertinent provisions of the sale contract are:

## "WARRANTY OF MANUFACTURER AND SELLER

"If within the time limits specified below, any product sold under this purchase order, or any part thereof, shall prove to be defective in material or workmanship upon examination by the Manufacturer, the Manufacturer will supply an identical or substantially similar replacement part f.o.b. the Manufacturer's factory, or the Manufacturer, at its opinion, will repair or allow credit for such part.

## "TIME LIMITS AND CONDITIONS

"The warranty set forth above shall be in effect with respect to (a) the Harvestore ... units and [its] respective accessories, 365 days after the date of the manufacturer Unit Installation Completion Reports."

Tested in the light of the plain meaning of the language of § 4–2–725(2), C.R.S., *see Heagney v. Schneider*, 677 P.2d 446 (Colo. App.1984), we conclude that the manufacturer did not explicitly promise that the silo would not malfunction—only that if it did it would be repaired or replaced. Therefore, under § 4–2–725, the buyers' cause of action accrued when tender of delivery was made.

The record reveals that tender occurred on September 26, 1978, and that the buyers' action was not commenced until March 1983, more than four years after tender. Accordingly, the trial court correctly ruled that the buyers' claim for breach of the repair warranty was barred.

We find inapposite the cases cited by the buyers. *Glen Peck, Ltd. v. Fritsche*, 651 P.2d 414 (Colo.App.1981) included a guarantee of a bull's ability to breed in the future, rather than a promise to replace the bull. Likewise, although the warranty in *Smith v. Union Supply Co., supra*, contained a repair or replace provision, it also contained an unconditional five year guarantee of the roof surface.

## II. *Silo 2 (No. 86CA0526)*

### A.

The buyers contend that the trial court denied them their right to a trial by jury on their deceit and negligent misrepresentations claims by finding that they had failed to state a prima facie case with respect to these claims. We agree.

In an effort to determine whether to preclude parol evidence, the trial court conducted a hearing pursuant to *Universal Drilling Co. v. Camay Drilling Co.*, 737 F.2d 869 (10th Cir.1984), to assess whether the buyers could establish a prima facie case of fraud. In that hearing, the buyers testified that in deciding to purchase silo 2 they had received no new representations. Rather, they had relied on the representations made to them about silo 1.

An essential element of both fraud and negligent misrepresentation is justifiable reliance. *Morrison v. Goodspeed*, 100 Colo. 470, 68 P.2d 458 (1937); *First National Bank v. Collins*, 44 Colo.App. 228, 616 P.2d 154 (1980).

From the above evidence, the court found that the buyers could not establish justifiable reliance with regard to silo 2. Based on its prior ruling that the buyers' deceit and negligent misrepresentations claims as to silo 1 arose in May 1979 and were barred by the products liability statute of limitations, the court reasoned that there was no justifiable reliance on the same representations for the purchase of silo 2 in September 1979.

In part I B of this opinion, we reversed the trial court ruling that the buyers' claims for silo 1 arose in May 1979, and remand for further fact finding. We make the same ruling here.

### B.

■ The buyers also contend that the trial court erred in finding, as a matter of law, that the buyers had disclaimed their remedy for breach of the manufacturer's express warranties. They argue that a factual issue was presented in this regard. We do not agree.

The buyers assert that the manufacturer made certain written representations re-

garding the Harvestore product, and certain oral representations were made by the seller. They contend that these statements constitute express warranties by both. We will assume *arguendo* that these were express warranties, but conclude that they were disclaimed by the contract of sale. *See* § 4-1-102, C.R.S., and Official Comment 2 thereto.

In addition to the "Warranty of Manufacturer and Seller" set forth above (Part I, C), the contract includes the following:

### "SECOND DISCLAIMER

"No other warranty, either express or implied and including a warranty of merchantability and fitness for a particular purpose has been or will be made by or in behalf of the manufacturer or the seller or by operation of law with respect to the equipment and accessories or their installation, use, operation, replacement or repair ... Irrespective of any statute, the buyer recognizes that the express warranty set forth above, is the exclusive remedy to which he is entitled and he waives all other remedies, statutory or otherwise...

### "ACKNOWLEDGEMENT AND RELIANCE

"I have read and understood the terms and conditions of this purchase order including the warranties, disclaimers and terms and conditions herein given to me, either the manufacturer or the seller. I rely on no other promises or conditions and regard that as reasonable because these are fully acceptable to me." (capitalization in original)

Next to the "Acknowledgment and Reliance" paragraph was a bold faced arrow directed from the paragraph to a box in which buyer Raymond Boyd had placed his initials.

In addition, the contract contained an "integration" provision:

"This order form is the entire and only agreement between the Seller and Buyer; and no oral statements or agreements not confirmed herein, or by a subsequent written agreement, shall be binding on either the Seller or Buyer."

Also, in their reply brief, the buyers characterize the sales transaction as being in a commercial context.

Under these circumstances, the trial court properly found that the parties agreed to the disclaimer of express warranties, and the dismissal of that claim was correct.

The judgment is affirmed as to the dismissal of the claims for breach of manufacturer's repair warranty and for breach of express warranties. The judgment is reversed as to the dismissal of the claims for deceit, negligent misrepresentations, strict product liability, and negligence, and the cause is remanded (1) for determination of when the buyers knew or should have known that damage to their corn was caused by a defect in silo 1 and, where applicable, silo 2, and (2) for further proceedings not inconsistent with this opinion.

STERNBERG and JONES, JJ., concur.