**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 1, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

LEPRINO FOODS COMPANY,

    Plaintiff - Appellant,

v.

DCI, INC.,

    Defendant - Appellee.

No. 17-1031
(D.C. No. 1:13-CV-02430-RM-KMT)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **HARTZ**, and **BACHARACH**, Circuit Judges.
_____

This appeal involves DCI, Inc.'s sales of crystallizer tanks to Leprino Foods Company. Years after the sales, the tanks corroded and Leprino sued DCI for breach of warranty and negligent nondisclosure. The district court granted summary judgment to DCI in this diversity action, concluding that (1) the breach-of-warranty claims were barred by the statute of limitations and (2) the claims of negligent nondisclosure failed because Leprino had not shown a duty to disclose.

The breach-of-warranty claims are time-barred if the claims accrued upon delivery of the tanks. Leprino argues that the claims accrued only after delivery because the sale contracts had guaranteed the tanks' condition beyond the delivery

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

dates. We disagree. Accrual can be delayed only by explicitly guaranteeing performance up to a future date or event, and no such guarantee existed here. Thus, DCI was entitled to summary judgment on the breach-of-warranty claims.

For claims of negligent nondisclosure, liability requires a duty to disclose. But Leprino has failed to demonstrate DCI had a duty to disclose. Thus, DCI was entitled to summary judgment on the claims of negligent nondisclosure.

For these reasons, we AFFIRM the award of summary judgment to DCI.

**I**

Leprino manufactures and sells dairy products. To manufacture the dairy products, Leprino purchased stainless steel tanks from DCI for use as lactose crystallizers.

In 2001, Leprino agreed to buy fourteen tanks (the "2001 Agreement"); these tanks were delivered in 2003. In 2007, Leprino bought twelve more (the "2007 Agreement"); these tanks were delivered in 2009. All twenty-six tanks were nearly identical. They are each approximately twenty-six feet in height and hold ten thousand gallons. The first fourteen tanks have an outer jacket made of "304 stainless steel," while the latter twelve tanks have an outer jacket made of "2101 Duplex steel." All twenty-six tanks have an inner sidewall made of 304 stainless steel, and insulation (between the inner sidewall and the outer jacket) made of three-inch expanded polystyrene and one-inch fiberglass.

Crystallizer tanks are susceptible to cracking and corrosion from chlorides found in the insulation between the inner sidewall and the outer jacket. To help

2

prevent this, DCI applied a single barrier coat of "Thurmalox 70 silicone" to the exterior surface of the inner sidewall of all 26 tanks. The coating was meant to "resist[] chloride-induced stress cracking and corrosion result[ing] from water leaching of soluble chlorides from insulation at operating temperatures over 150$^o$F." Vol. I at 54. In addition, the move to 2101 Duplex steel for the 2007 Agreement was in response to DCI's recommendation that "[t]he duplexes are excellent against chloride pitting and stress corrosion cracking." Vol. V at 854.

Both the 2001 Agreement and the 2007 Agreement included the same warranty provisions. Section 6.3 states, in relevant part:

> All goods, materials and equipment furnished under this Agreement will be fit for the purpose intended as specified in the Agreement, of good quality, new, free from faults and defects (whether patent or latent) in material or workmanship and in conformance with this Agreement (which includes all exhibits attached hereto). . . . The provisions of this Paragraph shall survive acceptance of the Equipment by Leprino, and shall run to Leprino's successors, assigns, customers and users of Leprino's product. The provisions of this Paragraph shall not be deemed waived by reason of Leprino's inspection, acceptance or payment.

Vol. I at 45, 63. Section 6.4 states, in relevant part:

> In addition to all other warranties made by Seller for the benefit of Leprino, Seller agrees that for a period of twelve months from and after the date of Final Completion, the Equipment is guaranteed to be and remain free from defects in material and workmanship under normal and proper use. If the Equipment (or any portion thereof), fails through defect in material or workmanship during such one year period, Seller will repair or replace such defective portion of the Equipment free of charge at the Property. Nothing contained in this Paragraph shall be construed to establish a period of limitation with respect to other obligations which the Seller might have under this Agreement.

3

> Establishment of the time period of one year as described in this Paragraph relates only to the specific obligation of Seller to correct the Work[.]

*Id.* at 45–46, 63.

In May 2012, Leprino notified DCI that some of the tanks had developed cracks. After some discussion, DCI informed Leprino that the likely cause was chloride stress corrosion cracking. In June 2012, Leprino personnel performed inspections inside all twenty-six tanks, and found cracks or leaks in twenty of them.

On September 6, 2013, Leprino filed suit against DCI in the United States District Court for the District of Colorado, alleging diversity jurisdiction. Leprino asserted the following claims: 1) breach of contract and express warranties under the 2001 Agreement; 2) breach of contract and express warranties under the 2007 Agreement; 3) negligent nondisclosure in the 2001 Agreement; 4) negligent nondisclosure in the 2007 Agreement; and 5) negligent misrepresentation in the 2007 Agreement.[1]

On May 4, 2016, Leprino filed its motion for partial summary judgment, and DCI filed its motion for summary judgment. On January 3, 2017, the district court issued a memorandum and order granting DCI's motion for summary judgment and denying Leprino's motion for partial summary judgment, reasoning that (1) the breach-of-warranty claims were untimely because the future-performance exception did not apply and (2) the claims of negligent nondisclosure failed because DCI had no duty to disclose. Leprino appeals, and we affirm.

---

[1] The claim for negligent misrepresentation is not at issue in this appeal.

4

## II

We review de novo the district court's grant of summary judgment, drawing all reasonable inferences and resolving all factual disputes in favor of Leprino. *Birch v. Polaris Indus.*, 812 F.3d 1238, 1251 (10th Cir. 2015). In conducting de novo review, we apply Colorado substantive law. *Etherton v. Owners Ins.*, 829 F.3d 1209, 1223 (10th Cir. 2016). Our aim is to reach the same conclusion that the Colorado Supreme Court would have reached if confronted with the same issue. *Id.* If that court has not spoken on an issue, we consider opinions by Colorado's intermediate appellate court, appellate courts in other states, and the District of Colorado. *Specialty Beverages v. Pabst Brewing*, 537 F.3d 1165, 1173-74 (10th Cir. 2008). We use these sources to predict what the Colorado Supreme Court would do if confronted with the same issue. *See id*. at 1174.

## III

### A.     The breach-of-warranty claims.

The district court concluded that Leprino's breach-of-warranty claims were time-barred. We agree.

In Colorado, in suits involving contracts for sale, a "cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made[.]" Colo. Rev. Stat. ("C.R.S.") § 4-2-725(2). Normally, the statute of limitations for breach-of-warranty claims begins running once the product is delivered, and at most, the

5

limitations period here was three years.[2] Leprino sued more than three years after

delivery. Thus, under the default rule, the limitations period had expired on the

breach-of-warranty claims before Leprino sued.

Although accrual ordinarily occurs when the goods are delivered, an exception

exists when "a warranty explicitly extends to future performance of the goods and

discovery of the breach must await the time of such performance." *Id.* If the

exception applies, the claims accrue when the breaches were discovered or should

have been discovered. *Id.* This exception is known as the "future-performance

exception."

Colorado courts have narrowly applied the future-performance exception,

requiring that the warranty (1) guarantee performance of the goods and (2) explicitly

extend to a specific time or event in the future. *See Boyd v. A.O. Smith Harvestore

Prods.*, 776 P.2d 1125, 1128 (Colo. App. 1989); *Smith v. Union Supply Co.*, 675 P.2d

333, 335 (Colo. App. 1983); *Glen Peck, Ltd. v. Fritsche*, 651 P.2d 414, 415 (Colo.

App. 1981). The warranties here fail to meet this narrow exception.

### 1.    The warranties must guarantee performance.

The warranty must be the right kind of warranty. Generally, there are two

types of warranties that arise in this context:  warranties to repair or replace and

warranties for future performance. "The key distinction between these two kinds of

---

[2] Before the district court, the parties disputed whether the appropriate
limitations period was two or three years. The difference is immaterial—Leprino
filed suit more than three years after delivery, meaning the default rule bars
Leprino's claims under either limitations period.

6

warranties is that a repair or replacement warranty merely provides a remedy if the product becomes defective, while a warranty for future performance *guarantees the performance* of the product itself for a stated period of time." *Boyd*, 775 P.2d at 1128-29 (quoting *Ontario Hydro v. Zallea Sys., Inc.*, 569 F. Supp. 1261, 1266 (D. Del. 1983)). Unsurprisingly, the future performance exception applies to the latter, not the former. *Id.* at 1128 (holding "a warranty for future performance must expressly provide a guarantee that the product will perform as promised in the future" rather than promise to repair or replace). It is possible, however, for a warranty to do *both*, and in such circumstances the exception would still apply. *Smith*, 675 P.2d at 335.

2. **The warranties must extend to a specific time or event in the future.**

The future performance exception requires that a warranty "explicitly extends to future performance of the goods." C.R.S. § 4-2-725(2). This means that the warranty must be both "prospective" and "explicit." *Glen Peck*, 651 P.2d at 415. In cases where a warranty was both prospective and explicit, and thus met the future performance exception, the warranty specified a future event or a future period of time. *See id.* (specific future event); *Smith*, 675 P.2d at 334 (specific future period of time).

*Glen Peck* involved the sale of two breeding bulls. The sales agreement contained an express warranty that "any bull Fourteen (14) months of age or over [would] prove a breeder after being used on cows known to be breeders." 651 P.2d at 415. The Colorado Court of Appeals concluded the warranty was sufficiently

7

"prospective" because it promised performance "not only at the moment of purchase but at some future date as well." *Id.* And the warranty was sufficiently "explicit" because it was "adequately stated so that there was no doubt as to its meaning." *Id.*

In *Boyd*, a case in which a warranty promised to repair or replace rather than guaranteed future performance, the court noted that "[t]he key distinction between these two kinds of warranties is that a repair or replacement warranty merely provides a remedy if the product becomes defective, while a warranty for future performance guarantees the performance of the product itself for a stated period of time." 776 P.2d at 1128 (quoting *Ontario Hydro*, 569 F. Supp. at 1266) (emphasis omitted). Once again, a Colorado court identified that expressing "a stated period of time" is "key" to meeting the future performance exception.

Leprino argues *Glen Peck* did not require specification of a future date or event for the future-performance exception to be "prospective." But this interpretation disregards *Glen Peck*'s reasoning: *Glen Peck* concluded that the future-performance exception applied only because the warranty had explicitly extended to a specific future event (use of the bulls for breeding). *See* 651 P.2d at 415. Thus, *Glen Peck* confirms the need for the warranty to explicitly extend to a specific date or event in the future.[3]

---

[3] *Glen Peck* does not explicitly *require* a warranty to extend to a specific date or event in the future. Instead, *Glen Peck* treats a warranty extending to a future date or event as *sufficient* to satisfy the future-performance exception. But *Glen Peck* does not suggest any other way to satisfy the future-performance exception. Thus, based on *Glen Peck*, we interpret Colorado law to confine the future-performance exception to warranties that extend to a specific date or event in the future.

8

In fact, most courts have limited the exception to warranties that explicitly extend performance to a date after the delivery. *See, e.g.*, *Econ. Hous. Co. v. Cont'l Forest Prods.*, 805 F.2d 319, 321 (8th Cir. 1986) ("The overwhelming weight of authority requires a buyer like Economy to prove that its seller specifically warranted the product for a defined period of time in the future."); *Standard All. Indus. v. Black Clawson Co.*, 587 F.2d 813, 820 (6th Cir. 1978) ("[A]n express warranty which makes no reference at all to any future date should not be allowed to extend past the limitations period."); *LTL Acres L.P. v. Butler Mfg.*, 136 A.3d 682, 687 (Del. 2016) ("To be explicit, the warranty must be unambiguous, and will normally 'indicate that the manufacturer is warranting the future performance of the goods for a specified period of time.'" (quoting *R.W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818, 823 (8th Cir. 1983))); *Safeway Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d 544, 548 (Tex. 1986) ("For an express warranty to meet the exception, it must make specific reference to a specific date in the future.").

Based on *Glen Peck* and the approach of most courts addressing the issue, we conclude that Colorado's future-performance exception applied only if the warranty had explicitly extended to a specific date or event in the future.

### 3. The warranties here do not satisfy the future-performance exception.

Leprino argues that three sentences in Section 6.3, taken together, meet the future performance exception. First, Leprino claims Section 6.3 guarantees performance:

9

All goods, materials and equipment furnished under this Agreement will be fit for the purpose intended as specified in the Agreement, of good quality, new, free from faults and defects (whether patent or latent) in material or workmanship and in conformance with this Agreement[.]

Vol. I at 45, 63. Second, after listing several other provisions, Section 6.3 arguably guarantees that performance in the future:

The provisions of this Paragraph shall survive acceptance of the Equipment by Leprino, and shall run to Leprino's successors, assigns, customers and users of Leprino's product. . . . [DCI] shall protect, defend, indemnify and hold harmless Leprino from . . . claims, demands, liens . . ., losses, costs, and expenses . . ., and 'liabilities' (as defined in Paragraph 7.2) of any kind or nature which result from or are in connection with or arising out of any breach of expressed or implied warranties as specified in this Agreement hereunder.

*Id.*

Because Section 6.3 does not offer any specific future event or date to limit the warranty, Leprino asserts that Section 6.3 creates a warranty that lasts "indefinitely." Opening Br. at 20. To support this assertion, Leprino identifies four parts of Section 6.3:

1. The warranties expressly covered latent defects.
2. The warranties survived acceptance of the tanks.
3. The warranties ran to Leprino's successors, assigns, customers, and users.
4. DCI promised to defend and indemnify Leprino for claims arising out of a breach of the warranties.

Leprino's first three arguments fail because the warranty language did not explicitly extend the guarantee of performance to a specific date or event in the future.

10

Leprino's last argument fails because the promise to defend or indemnify did not guarantee performance of the goods themselves.

*First*, the warranties stated that the tanks would be "free from faults and defects (whether patent or latent)." Vol. I at 45, 63. Leprino argues that this language extended the warranties to future performance because latent defects appear only after purchase and are not discoverable through reasonable inspection. *See Cosmopolitan Homes v. Weller*, 663 P.2d 1041, 1045 (Colo. 1983) (en banc) (defining a latent defect).

Although latent defects appear after delivery, discovery and performance entail different matters. Regardless of when the breach becomes discoverable, the future-performance exception applies only if the warranties explicitly extend *performance* to a specific date or event in the future.

The warranties here failed to explicitly extend the guarantee of performance notwithstanding the coverage of latent defects. With no explicit extension to a specific date or event in the future, the warranties guaranteed only that the tanks would be free of defects when delivered, regardless of when the defect could be reasonably discovered. Because the protection against latent defects did not explicitly extend performance of the goods to a specific date or event in the future, the contractual language did not trigger the future-performance exception.

*Second*, the warranties also provided that they would "survive acceptance of the Equipment by Leprino" and would "not be deemed waived by reason of Leprino's inspection, acceptance or payment." Vol. 1 at 45, 63. The district court concluded

11

that this language served only to allow Leprino to enforce the warranties after accepting the goods. Leprino disagrees, arguing that the "survive acceptance" language must extend the warranties to future performance because the district court's interpretation would give the same meaning to both phrases ("shall survive acceptance of the equipment by Leprino" and "shall not be deemed waived by reason of Leprino's inspection, acceptance or payment").

The problem with Leprino's argument is that the "survive acceptance" language did not explicitly extend the warranties to future performance. *See Glen Peck*, 651 P.2d at 415 (noting that an explicit guarantee of future performance leaves "no doubt as to its meaning"). Because the "survive acceptance" clause did not explicitly extend to future performance, this clause did not trigger the future-performance exception.

*Third*, the warranties provided that they would "run to Leprino's successors, assigns, customers and users of Leprino's product." Vol. 1 at 45, 63. This clause did not explicitly extend the warranties to future performance. Instead, the clause addressed only who could sue for breach of the warranty.

Leprino argues that this interpretation is absurd, but we see nothing about this interpretation that is absurd, or even unusual. If another company acquired Leprino and discovered a breach of warranty within the three-year period of limitations, this clause would allow the successor to bring a breach-of-warranty claim against DCI. In this manner, the clause extended who could enforce the warranties but did not explicitly extend the warranties to future performance.

12

*Fourth*, DCI promised to "protect, defend, indemnify and hold harmless Leprino from any and all damages . . . , claims, demands, liens . . . , losses, costs and expenses . . . , and 'liabilities' (as defined in Paragraph 7.2)" arising from a breach of warranty. *Id*. Leprino argues that this language explicitly extended the warranties to future performance because Paragraph 7.2 stated that the indemnification provisions would "survive Final Completion of the Work." The work was not completed until the tanks met certain standards. As a result, Leprino asserts that the warranties extended the guarantee to some date after delivery.

We disagree. DCI was simply guaranteeing that it would defend and indemnify Leprino if the products failed; the language did not guarantee continued performance of the products themselves. *Cf. Boyd*, 776 P.2d at 1128 (holding that a repair-or-replace warranty does not guarantee performance, only that the seller would repair or replace the product if it failed to perform). Because the warranties did not guarantee performance of the goods, DCI's promise to defend and indemnify Leprino did not trigger the future-performance exception.

### 4. Potential ambiguity in the warranty language would not justify denial of summary judgment.

The warranties did not explicitly extend to future performance. But Leprino argues that even if the scope of the warranties had been ambiguous, summary judgment would be inappropriate based on a triable issue of fact on the parties' intent.

13

In determining whether warranties explicitly extend to future performance, we are considering a mixed question of law and fact. *W. Recreational Vehicles v. Swift Adhesives*, 23 F.3d 1547, 1550 (9th Cir. 1994). A mixed question of law and fact can be resolved on summary judgment if reasonable minds cannot differ. *Resolution Tr. v. Fed. Sav. & Loan Ins.*, 25 F.3d 1493, 1502 (10th Cir. 1994).

Though ambiguity ordinarily suggests a factual issue,[4] the opposite is true here because the warranty language had to be "explicit" to trigger the future-performance exception. By definition, the warranty language could not be "explicit" if it was ambiguous. *Webster's II New Riverside University Dictionary* 455 (1994) (defining "explicit" as "[e]xpressed without vagueness or ambiguity"); *see also Glen Peck*, 651 P.2d at 415 (concluding that an explicit guarantee of future performance leaves "no doubt as to its meaning"). Thus, ambiguity in the warranty language would *prevent* application of the future-performance exception as a matter of law. *See Joswick v. Chesapeake Mobile Homes, Inc.*, 765 A.2d 90, 95 (Md. 2001) (stating that ambiguity weighs against the future-performance exception).

Because the warranties did not explicitly extend to future performance, summary judgment was appropriate because the statute of limitations barred Leprino's breach-of-warranty claims.

---

[4] *See Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 912 (Colo. 1996) ("[O]nce a contract is determined to be ambiguous, the meaning of its terms is generally an issue of fact to be determined in the same manner as other disputed factual issues." (quoting *Union Rural Elec. Ass'n v. Pub. Utils. Comm'n*, 661 P.2d 247, 251 n.5 (Colo. 1983))).

14

**B.      The negligent nondisclosure claims.**

Leprino's negligent nondisclosure claims rely on the Restatement (Second) of Torts (the "Restatement") § 551.  Opening Br. at 29; *see also Poly Trucking, Inc. v. Concentra Health Servs., Inc.*, 93 P.3d 561, 564 (Colo. App. 2004) (citing § 551 to determine whether the defendant had a duty to disclose under a claim for fraudulent nondisclosure).[5]

Section 551(2) provides five scenarios under which a party has a duty to disclose.  *See* § 551(2)(a)-(e) (detailing each instance in a separate subsection).  Before the district court, Leprino argued that DCI had a duty to disclose under subsections (a), (b), and (e), but on appeal, only argues for subsections (b) and (e).  Section 551(2) provides, in relevant part:

> (2)  One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
>
> . . .
> (b)  matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and
> . . .

[5] Although Colorado courts have adopted the Restatement § 551 to determine whether a defendant has a duty to disclose as part of a *fraudulent* nondisclosure claim, Colorado courts have yet to adopt the Restatement § 551 for *negligent* nondisclosure claims.  In fact, it is unclear whether a claim for negligent nondisclosure is viable *at all* in Colorado.  *See Sheffield Servs. Co. v. Trowbridge*, 211 P.3d 714, 725 (Colo. App. 2009) ("In our analysis we assume, but decline to decide . . . a claim for negligent nondisclosure would be viable."), *overruled on other grounds by Weinstein v. Colborne Foodbotics, LLC*, 302 P.3d 263, 268-69 (Colo. 2013).  Because the parties do not dispute either that a negligent nondisclosure claim is viable or that the Restatement § 551 applies, we assume for the purposes of this appeal that Colorado both recognizes negligent nondisclosure claims and applies § 551 to define a duty to disclose.

15

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or the other objective circumstances, would reasonably expect a disclosure of those facts.

The district court granted summary judgment against Leprino, holding that Leprino failed to establish that DCI had a duty to disclose under any subsection of § 551(2). Because "[w]hether a defendant had a duty to disclose a particular fact is a question of law," *Berger v. Sec. Pac. Info. Sys., Inc.*, 795 P.2d 1380, 1383 (Colo. App. 1990), we review the district court's decision de novo.

We first address whether the district court properly considered the duty to disclose question, and then turn to the merits of Leprino's arguments under sections 551(2)(b) and 551(2)(e).

**1.     The district court properly considered the duty to disclose argument.**

Leprino argues that DCI's motion for summary judgment "did not challenge this element, and thus the burden never shifted to Leprino in opposing DCI's motion." Opening Br. at 28 (citation omitted). Although we agree that DCI's motion did not challenge the duty to disclose element, we conclude that the district court properly reached this question because Leprino cured the issue by presenting the totality of its evidence in its response. And, even assuming the district court erred, Leprino has failed to prove any prejudice resulting from that error.

Summary judgment is warranted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."

16

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Although a moving party

"always bears the initial responsibility of informing the district court of the basis for

its motion," *id.* at 323, "the burden on the moving party may be discharged by

'showing'—that is, pointing out to the district court—that there is an absence of

evidence to support the nonmoving party's case," *id.* at 325.

In most instances where the moving party (typically, the defendant) fails to

identify the absence of evidence to support an element of the nonmoving party's

case, summary judgment—premised on the lack of evidence for that element—is

inappropriate. For example, we have explained:

> To be sure, there is one situation in which the [plaintiffs] would
> have no burden to show the merits of a nondisclosure claim based
> on one or more of the five alternative circumstances [in Colorado
> law]. If [the plaintiffs] had raised such a claim in district court
> and the [defendant's] motion for summary judgment had not
> presented argument and evidence showing that the claim lacked
> merit, summary judgment would have been inappropriate. After
> all, it is not the party opposing summary judgment that has the
> burden of justifying its claim; the movant must establish the lack
> of merit.

*Alpine Bank v. Hubbell*, 555 F.3d 1097, 1110 (10th Cir. 2009). In such a scenario,

the nonmoving party does not then bear a burden to present evidence supporting an

unchallenged element of its case.

But, a "plaintiff confronted with such a facially deficient motion sometimes

cures defendant's error by undertaking to set forth the totality of its evidence in its

opposition papers." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107,

116 (2d Cir. 2017). "Assessing the sufficiency of the evidence thus set forth, a court

17

might conclude that there is no dispute over material fact and that defendant is entitled to judgment as a matter of law." *Id.*

When DCI moved for summary judgment against Leprino, DCI included only a passing mention to Leprino's failure to prove DCI had a duty to disclose—an essential element of Leprino's nondisclosure claim. Vol. I at 116. Specifically, DCI's motion stated:

> Leprino made only vague allegations of concealment or misrepresentation in its Complaint, claiming "DCI had reason to suspect that there were defects in the design and/or fabrication of its Tanks which would render them unfit for Leprino Foods' intended purpose," and that DCI had a duty to disclose its alleged concerns to Leprino prior to the parties' execution of the 2001 and 2007 Agreement[s].

*Id.* (quoting the complaint).

Given DCI's failure to raise the duty to disclose issue in its moving papers, the burden did not shift to Leprino, and Leprino did not have to respond to an argument that DCI arguably forfeited. *See Alpine Bank*, 555 F.3d at 1110. On appeal, Leprino—in a single sentence—makes this exact argument: "DCI's moving papers did not challenge [the duty to disclose] element, and thus the burden never shifted to Leprino in opposing DCI's motion." Opening Br. at 28 (citation omitted). But, Leprino "cure[d] [DCI]'s error by undertaking to set forth the totality of its evidence in its opposition papers," *Nick's Garage*, 875 F.3d at 116, that DCI owed a duty to Leprino, by stating in its response:

> At all relevant times, DCI owed a duty of disclosure to Leprino because of the parties' relationship of trust and confidence, the historic relationship between them, and other objective

18

circumstances. Leprino had purchased equipment from DCI for decades prior to the events at issue. DCI held itself out to Leprino and the public as expert in the design and manufacture of [lactose crystallizers] to fit the customers' intended uses. Consistent with its advertised "DCI Process," DCI collected the information from Leprino it requested to custom design and manufacture [lactose crystallizers] to meet Leprino's needs. DCI then provided Leprino with DCI's "solutions to [Leprino's] technical requirements" in the form of proposals recommending the materials of construction (including steel grade, insulation and Thurmalox 70) and the type of cooling medium. Leprino also turned to DCI for guidance following its discovery of discolored legs on one [lactose crystallizer] in October 2009, and again in May 2012 following Leprino's discovery of cracks and leaks. Finally, DCI's President acknowledged the parties' special relationship to DCI's management team.

Vol. VI at 1122-23 (internal citations omitted).

Though DCI's initial motion did not address the duty to disclose, the district court granted summary judgment against Leprino, discussing Leprino's evidence and holding that it was inadequate to support a duty to disclose. *Id.* at 1279-86. This was not error.

But, even assuming the district court erred, we do not reverse for procedural errors when "the [appellants] have failed to show prejudice." *Alpine Bank*, 555 F.3d at 1115. In such a case, "[t]he district court's failure does not entitle them to any relief." *Id.* Here, Leprino does not indicate what additional evidence, if any, it would have provided to support DCI's duty to disclose if DCI had robustly challenged the duty to disclose element. In fact, its entire argument before us rests on facts presented to the district court. *See, e.g.*, Opp'n Br. at 30-31 (arguing DCI's representations about Thurmalox 70 created a false impression that required

19

disclosure of additional facts to correct); *id.* at 32-33 (arguing DCI's "relationship" with Leprino, based upon their past business transactions and DCI's President's remarks, created a duty to disclose). Because Leprino has "failed to show any prejudice from the district court's failure," "we grant no relief." *Alpine Bank*, 555 F.3d at 1114.[6]

## 2. Negligent nondisclosure under § 551(2)(b)

Restatement § 551(2)(b) creates a duty to disclose "matters known to [a party] that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading." The comments to § 551 make clear that there are two instances when a statement may be misleading under § 551(2)(b): (1) "when it purports to tell the whole truth and does not" and (2) when "made so ambiguously that it may have two interpretations, one of which is false." Restatement § 551 cmt. g (commenting directly on § 551(2)(b)); *see also Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1164 (10th Cir. 2008) (applying Colorado law and § 551(2)(b),

---

[6] In this particular case, holding otherwise would simply waste judicial resources. We have the entire record before us, and on appeal, the parties have fully briefed and argued the duty to disclose issue. Reversing and remanding to the district court would entail the parties making the exact same arguments on the exact same record in additional summary judgment briefs, or it would entail the district court permitting plaintiffs to proceed to trial on a deficient claim.

If this same forfeiture issue arises in another case, and the nonmoving party again cures the movant's error, the district court there would have several options available to it. Among them would be to permit additional submissions under Federal Rule of Civil Procedure 56(e)(1), or to sua sponte give notice to the nonmoving party of a deficient claim under Rule 56(f)(3) before considering summary judgment on its own.

But, given that this issue has been fully briefed and argued before us, we exercise our discretion to reach the merits of the duty to disclose issue.

20

and concluding that a "refer[ence] to the six-minute batteries as 'new'" was misleading because it was "ambiguous in that it can be understood to represent one of at least two things: (1) that the batteries are brand-new, or (2) that the batteries are new only insofar as they are not the same as the old order of 15-minute batteries").

Here, Leprino argues DCI made the misleading statements that Thurmalox 70: (1) "resists chloride-induced stress cracking and corrosion result[ing] from water leaching of soluble chlorides from insulation"; and (2) "resists chloride induced cracking and corrosion." Opening Br. at 30-31 (quoting Vol I at 54, 69). DCI allegedly "knew when it made these statements that they would create the false impression that Thurmalox would provide Leprino with adequate protection against [corrosion]." *Id.* at 31. These statements, Leprino argues, created a duty "to disclose the fact that (i) a barrier coating may not have been necessary in the first instance had DCI fabricated the [tanks] with a chloride-free insulation, which was available and used by other DCI customers to reduce the risk of [corrosion], or (ii) that the barrier coating should be used in conjunction with chloride-free insulation, a disclosure DCI made to other tank customers." *Id.*

Leprino does not argue that Thurmalox 70 does not, in fact, help resist corrosion. Indeed, it is unclear whether Leprino is arguing that DCI's statements "purport[] to tell the whole truth and do[] not" or that they are "made so ambiguously that [they] may have two interpretations, one of which is false." Restatement § 551 cmt. g.

21

Under either argument, Leprino loses.  Nothing about DCI's statements "purports to tell the whole truth."  And the statements are not ambiguous; Thurmalox 70 resists corrosion under any reasonable interpretation.  To succeed on this point, Leprino must argue that "resists corrosion" does not obviously mean "resists corrosion," but could also mean "provides adequate protection, alone, to prevent corrosion."  That stretches DCI's statements too far.

### 3.     Negligent nondisclosure under § 551(2)(e)

Section 551(2)(e) creates a duty to disclose "facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or the other objective circumstances, would reasonably expect a disclosure of those facts."  This analysis has two subparts: (1) were the "facts basic to the transaction"; and (2) was there a "relationship" between the parties such that plaintiff "would reasonably expect a disclosure of those facts."

*Facts basic to the transaction*

Comment j describes the meaning of "basic facts":

> A basic fact is a fact that is assumed by the parties as a basis for the transaction itself.  It is a fact that goes to the basis, or essence, of the transaction, and is an important part of the substance of what is bargained for or dealt with.  Other facts may serve as important and persuasive inducements to enter into the transaction, but not go to its essence.  These facts may be material, but they are not basic.

Restatement § 551 cmt. j.  Comment k further explains when a fact is *not* basic: "When the facts are patent, or when the plaintiff has equal opportunity for obtaining

22

information that he may be expected to utilize if he cares to do so . . . there is no obligation to give aid to a bargaining antagonist[.]"

Leprino argues that the nondisclosed facts (previously listed in Leprino's argument for § 551(2)(b) nondisclosures) are "basic" to its transaction with DCI because "DCI's Tank proposals expressly specified and acknowledged that the [tanks] would be exposed to chlorides daily from Leprino's lactose permeate, the City-provided cooling water, and DCI's two layers of chloride-containing insulation." Opening Br. at 32 (citations omitted).

First, this argument shows that the facts were important, but not necessarily basic. Comment j establishes that basic facts go to the "essence" of the transaction; it is possible for a fact to be "material" but not "basic." The illustrations to comment j bear this out. *Compare* Restatement § 551 cmt. j, illus. 3 ("A sells to B a dwelling house, without disclosing to B the fact that the house is riddled with termites. This is a fact basic to the transaction."), *with id.* illus. 4 ("A sells to B a dwelling house, knowing that B is acting in the mistaken belief that a highway is planned that will pass near the land and enhance its value. A does not disclose to B the fact that no highway is actually planned. This is not a fact basic to the transaction.").

Second, Leprino does not argue that these facts are not "patent"—that Leprino could not, through its own investigation, discover that chloride-free insulation exists, or that Thurmalox 70 alone might not provide adequate protection. Simply put, DCI is not under a duty to disclose every possible option Leprino could have purchased for its stainless steel tanks.

23

*Relationship between the parties*

Comment l to § 551 describes when a relationship is sufficient under § 551(2)(e): "In general, the cases in which the rule stated in Clause (e) has been applied have been those in which the advantage taken of the plaintiff's ignorance is so shocking to the ethical sense of the community, and is so extreme and unfair, as to amount to a form of swindling, in which the plaintiff is led by appearances into a bargain that is a trap, of whose essence and substance he is unaware." Restatement § 551 cmt. l.

For example, "a seller who knows that his cattle are infected with tick fever or contagious abortion is not free to unload them on the buyer and take his money, when he knows that the buyer is unaware of the fact, could not easily discover it, would not dream of entering into the bargain if he knew and is relying upon the seller's good faith and common honesty to disclose any such fact if it is true." *Id.*

In Colorado, "when parties are dealing as vendor and vendee they deal at arm's length." *Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.*, 965 P.2d 105, 112 (Colo. 1998) (quoting *Williams v. Wagers*, 184 P.2d 497, 500 (Colo. 1947)) (refusing to conclude "a special relationship" existed under § 551(2)(e) where the parties dealt as vendor and vendee, even though the defendant's employee "played integral roles" in "negotiating" and "encouraging" the transaction).

Leprino argues that such a relationship existed with DCI because their relationship was "long-standing." Opening Br. at 32. This is irrelevant. The transaction here is not a case where "the advantage taken of the plaintiff's ignorance

24

is so shocking to the ethical sense of the community, and is so extreme and unfair, as to amount to a form of swindling, in which the plaintiff is led by appearances into a bargain that is a trap, of whose essence and substance he is unaware." Restatement § 551 cmt. l.

Leprino and DCI dealt as vendor and vendee. They were sophisticated businesses dealing at "arm's length." *See Mallon Oil Co.*, 965 P.2d at 112. Leprino has shown nothing to overcome this default rule in Colorado law, meaning that no special relationship existed under § 551(2)(e).

Because Leprino presented the totality of its evidence regarding DCI's purported duty to disclose, and still failed to establish DCI had such a duty, summary judgment was appropriate against Leprino's nondisclosure claims.

## IV

The breach-of-warranty claims are time-barred because the warranties do not explicitly extend to future performance, and the claims of negligent nondisclosure fail because DCI had no duty to disclose.[7] Accordingly, we affirm the grant of summary judgment to DCI.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

---

[7] Because we conclude that DCI did not have a duty to disclose, we need not address DCI's alternative argument for affirmance under the economic-loss rule.

25

*Leprino Foods Co. v. DCI, Inc.*, No. 17-1031
**BACHARACH**, J., concurring in part and dissenting in part.

This case involves claims of breach of warranty and negligent nondisclosure arising from the sale of crystallizer tanks. Leprino Foods Company appeals the district court's grant of summary judgment to DCI, Inc., and the majority affirms on all claims.

I concur with the majority's affirmance on the warranty claims. In my view, however, DCI was not entitled to summary judgment on the claims of negligent nondisclosure. The district court ruled that Leprino had failed to show a duty of disclosure, but DCI's summary-judgment motion had not raised this issue in district court. Thus, the burden to show a duty never shifted to Leprino. And in the absence of a burden shift, summary judgment could not be granted based on Leprino's failure to show a duty of disclosure.

DCI also urges an alternative basis to affirm on the claims of negligent nondisclosure, invoking the economic-loss rule. I would reject DCI's alternative argument because the claims arose from a duty outside of the contracts. Accordingly, I respectfully dissent on the majority's treatment of the claims of negligent nondisclosure.

## I. Leprino had no burden to present evidence of a duty of disclosure.

Summary judgment is ordinarily appropriate for the defendant if the plaintiff "fails to make a showing sufficient to establish the existence of an

element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). But this showing is required only if the defendant demonstrates "the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Split Rail Fence Co. v. United States*, 852 F.3d 1228, 1237 (10th Cir. 2017).

The Supreme Court explained in *Celotex Corp. v. Catrett* that the burden shifts to the plaintiff only if the defendant informs the district court of the basis for summary judgment and identifies materials that would preclude a genuine issue of material fact. 477 U.S. at 322. This burden is satisfied by showing the district court that there is a lack of evidence supporting the plaintiff's claim. *Id.* at 325. If the defendant fails to satisfy its initial burden, the burden never shifts to the plaintiff. *See Alpine Bank v. Hubbell*, 555 F.3d 1097, 1110 (10th Cir. 2009);[1] *cf. Tavery v. United States*, 32 F.3d 1423, 1427 n.5 (10th Cir. 1994) (refusing to affirm the

---

[1]   There we explained:

> To be sure, there is one situation in which the [plaintiffs] would have no burden to show the merits of a nondisclosure claim [based on Colorado's five ways to establish a duty of disclosure]. If [the plaintiffs] had raised such a claim in district court and the [defendant's] motion for summary judgment had not presented argument and evidence showing that the claim lacked merit, summary judgment would have been inappropriate. After all, it is not the party opposing summary judgment that has the burden of justifying its claim; the movant must establish the lack of merit.

*Hubbell*, 555 F.3d at 1110.

award of summary judgment on an alternative ground because the moving party had not raised the issue in district court, failing to put the nonmoving party on notice of a duty to present evidence on the issue).

DCI asserted at oral argument that the summary-judgment motion had alleged a failure to show a duty of disclosure. DCI's assertion fails for two reasons:

1.    The argument was first made in oral argument.

2.    DCI's cursory mention of a duty of disclosure did not satisfy its initial burden under *Celotex*.

After Leprino raised the burden-shifting issue in the opening appeal brief, DCI responded that it was fair to consider the existence of a duty of disclosure because Leprino had urged such a duty in responding to the summary-judgment motion. Because Leprino had discussed the duty, DCI argued that its own failure to raise the existence of the duty in the summary-judgment motion was irrelevant. But DCI's argument misses the point: Leprino would never have incurred a burden to show a duty of disclosure if DCI had failed to raise the issue in its summary-judgment motion. *See Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir. 1989) ("When a party moves for summary judgment on ground A, his opponent is not required to respond to ground B—a ground the movant might have presented but did not.").

3

Perhaps for this reason, DCI changed its approach at oral argument, stating that it had in fact raised the issue in its summary-judgment motion. We do not generally consider arguments first raised at oral argument. *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1043 (10th Cir. 2005). But DCI's argument would fail even if it had been properly raised.

DCI bore the initial burden to

- inform the district court that the motion for summary judgment had been based at least partly on Leprino's failure to establish a duty of disclosure and

- show the district court that Leprino had failed to present evidence supporting a duty of disclosure.

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). DCI failed to satisfy either burden.

DCI did not inform the district court of a challenge to the existence of a duty of disclosure. The sole mention of duty in DCI's summary-judgment motion was this sentence:

> Leprino made only vague allegations of concealment or misrepresentation in its Complaint, claiming "DCI had reason to suspect that there were defects in the design and/or fabrication of its Tanks which would render them unfit for Leprino Foods' intended purpose," and that DCI had a duty to disclose its alleged concerns to Leprino prior to the parties' execution of the 2001 and 2007 Agreement[s].

Appellant's App'x, vol. 1 at 116. Preceding this sentence was a paragraph listing the elements that Leprino had to prove. *Id*. Nowhere in that paragraph did DCI state that Leprino had to prove a duty of disclosure.

4

After the sentence mentioning a duty, DCI argued only that Leprino had failed to present evidence of a factual misrepresentation or omission.

DCI's single sentence in the summary-judgment motion did not inform the district court of a challenge to the existence of a duty of disclosure. DCI was arguing instead that Leprino had failed to show a misrepresentation or omission. The reference to a duty was in DCI's summary of what Leprino had asserted, not in a separate argument.

Even if the brief mention of a duty of disclosure had satisfied the burden to raise the issue, DCI did not argue that Leprino had lacked evidentiary support for the duty. Thus, DCI did not satisfy its initial burden to identify an issue involving a duty of disclosure. Because the burden never shifted to Leprino, the district court erred in granting summary judgment to DCI on the claims of negligent nondisclosure.

The majority acknowledges that DCI failed to satisfy its threshold burden in district court. But the majority concludes that this failure was cured by Leprino's voluntary submission of evidence. For this conclusion, the majority relies on language in *Nick's Garage, Inc. v. Progressive Casualty Insurance Co.*, 875 F.3d 107 (2d Cir. 2017). There the Second Circuit reversed an award of summary judgment because the movant had failed to satisfy its initial burden under *Celotex*. *Nick's Garage*, 875 F.3d at 114-15. In dicta, however, the court indicated that the nonmoving party

5

might "cure" such a failure by "undertaking to set forth the totality of its evidence in its opposition papers." *Id.* at 116. I disagree with this dicta.

The Second Circuit's dicta and its application here run afoul of *Celotex. See* p. 2, above. *Celotex* states that the burden shifts to the nonmoving party only if the moving party satisfies its initial burden. DCI did not carry its initial burden on the duty of disclosure. *See* p. 2, above. So how could Leprino fail to satisfy a burden it never had?

The majority states that Leprino's voluntary submission of evidence cured DCI's failure. I respectfully disagree: Leprino never incurred a burden to present evidence on a duty of disclosure, and no federal appellate court has ever held that voluntary submission of evidence can cure the movant's failure to satisfy its threshold burden under *Celotex*.

We might surmise, as the majority does, that Leprino presented all of its evidence supporting a duty of disclosure and would have presented the same evidence if DCI had challenged the existence of a duty in the summary-judgment motion. But DCI did not assert such a challenge. And under *Celotex*, Leprino never incurred a burden to present evidence supporting a duty of disclosure in the absence of such a challenge.

There is nothing in *Celotex* or our other precedents to suggest that a claimant might assume an otherwise nonexistent burden by voluntarily presenting evidence. Regardless of whether Leprino voluntarily submitted evidence, it couldn't have assumed a burden that had always remained with

6

DCI. Without a burden on Leprino to present evidence of a duty of disclosure, the district court could not grant summary judgment to DCI based on Leprino's failure to fulfill that burden.

The majority also concludes that even if the district court had erred, reversal would be unwarranted because Leprino had failed to show prejudice. For this conclusion, the majority relies on *Alpine Bank v. Hubbell*, 555 F.3d 1097 (10th Cir. 2009). There we rejected two of the appellants' arguments for failure to show prejudice. 555 F.3d at 1114-15. But there the error involved only the sequence of the district court's rulings on multiple motions, not the grant of summary judgment against a plaintiff who had no duty to present any evidence. *See id.* Neither *Alpine Bank* nor any other federal appellate opinion has ever required an appellant to show prejudice in order to obtain reversal from a district court's grant of summary judgment in the absence of a duty to present supporting evidence. *See, e.g.*, *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 145-46 (3d Cir. 2004) (reversing without discussion of prejudice a grant of summary judgment on claim because the moving party failed to carry its initial summary-judgment burden); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1107 (9th Cir. 2000) (same).

The majority views reversal as a waste of judicial resources based on Leprino's ultimate inability to present evidence supporting a duty of disclosure. As the majority suggests, Leprino's claims of negligent

7

nondisclosure might ultimately fail in a subsequent summary-judgment motion or at trial. But we are obligated to follow *Celotex*, a Supreme Court precedent. Under *Celotex* DCI bore the initial burden on the duty of disclosure, and the majority acknowledges that DCI failed to satisfy this burden. In light of the failure to satisfy this burden, the district court erred in granting summary judgment to DCI on the claims of negligent nondisclosure, and I would reverse the grant of summary judgment on that claim.

## II. The economic-loss rule did not apply.

Alternatively, DCI urges affirmance under the economic-loss rule. But this rule did not apply because DCI's alleged duty of disclosure had arisen outside of the contracts.

The economic-loss rule bars tort recovery for economic losses arising from a contractual duty. *Town of Alma v. AZCO Constr.*, 10 P.3d 1256, 1262-63 (Colo. 2000) (en banc). To determine whether the economic-loss rule applies, Colorado courts "focus on the source of the duty alleged to have been violated." *Id.* at 1263. Absent an independent duty of care, a party suffering only economic loss from the breach of a contractual duty cannot recover for a tort that arises from the breach. *Id.* at 1264.

Colorado courts have generally concluded that claims of negligent misrepresentation are not subject to the economic-loss rule because they are based on misrepresentations preceding entry into the contract. *See Van*

8

*Rees v. Unleaded Software*, 373 P.3d 603, 607 (Colo. 2016) ("Van Rees's tort claims are based on misrepresentations made prior to the formation of the contracts, which he alleges induced him to enter into the contracts and therefore violated an independent duty in tort to refrain from such conduct.").[2]

Leprino contends that DCI incurred a duty of disclosure from misleading statements, party relationships, and industrial customs. *See* Restatement (Second) of Torts § 551(2)(b), (e). For these contentions, Leprino relies on § 551 of the Second Restatement of Torts rather than anything in the contracts. As Leprino points out, the Colorado Court of Appeals has held that § 551 creates a duty of disclosure independent of the contract, preventing application of the economic-loss rule for an alleged nondisclosure. *Gattis v. McNutt*, 318 P.3d 549, 557 (Colo. App. 2013).

DCI argues that the claims of negligent nondisclosure were based on contractual duties, pointing to two cases: *BRW, Inc. v. Dufficy & Sons*, 99 P.3d 66 (Colo. 2004) (en banc), and *A Good Time Rental v. First American Title Agency*, 259 P.3d 534 (Colo. App. 2011). In these cases, the alleged misrepresentation consisted only of the defendant's assertion that it was complying with the contract. *BRW*, 99 P.3d at 74; *A Good Time Rental*, 259

---

[2] Leprino's claims involve negligent nondisclosure, not negligent misrepresentation. But both parties rely on case law involving negligent misrepresentation.

9

P.3d at 541. Here, however, the omissions preceded entry into the contracts. This difference is critical because *BRW* distinguished cases in which the misrepresentation had preceded entry into the contract. *BRW*, 99 P.3d at 75.

Leprino's claims of negligent nondisclosure were based on a duty that

- was independent of the contracts and

- had arisen before entering into the contracts.

Therefore, the economic-loss rule did not apply.

## III. Conclusion

On summary judgment, the moving party bears the initial burden. Because DCI failed to satisfy this burden, Leprino never incurred a burden to show a duty of disclosure. And the economic-loss rule does not apply here because the claims of negligent nondisclosure were based on an independent duty that had arisen prior to the contracts. Thus, I would reverse the grant of summary judgment to DCI on the claims of negligent nondisclosure.